**Robert F. MALONEY, Jr.**

v.

**Olive SHEEHAN, Director of Manpower Planning, State of Connecticut Department of Labor, et al.**

**Civ. No. H–77–93.**

United States District Court,
D. Connecticut.

June 27, 1978.

Jeffrey N. Gelfon, Farmington, Conn., for plaintiff.

Morton H. Greenblatt, Asst. Corp. Counsel, Meriden, Conn., Donald E. Wasik, Asst. Atty. Gen., Employment Security Division Labor Dept., Hartford, Conn., for defendants.

RULING ON MOTIONS TO DISMISS

BLUMENFELD, District Judge.

This case presents the question whether a former city employee who was dismissed from a position funded under the Comprehensive Employment and Training Act of 1973 ["CETA" or "the Act"], 29 U.S.C. §§ 801–992, without prior written notice and an opportunity to respond to charges, is entitled to a back pay remedy upon reinstatement to another CETA position.

The plaintiff claims that his dismissal by the City of Meriden, Connecticut, from a CETA position without prior written notice violated a regulation promulgated by the Secretary of the Department of Labor ["the Secretary"], High Unemployment Areas, Comprehensive Manpower Programs and Grants, 40 Fed.Reg. 22673, 22715 (1975) (current version at 29 C.F.R. § 98.26(a)),[1] deprived him of liberty and property without due process of law, and caused injury to his reputation. This action for compensatory and punitive damages is brought under CETA and under 42 U.S.C. §§ 1983 and 1985, against the Mayor and Director of Personnel of the City of Meriden, and against the Commissioner and Director of Manpower Planning of the Connecticut State Department of Labor, which administered the public service program under which plaintiff was employed. All defendants have moved to dismiss the complaint on the ground that the court lacks subject matter jurisdiction over the action; or alternatively, on the ground that the complaint fails to state a claim for which relief can be granted.[2] Fed.R.Civ.P. 12(b)(1), (6).

For purposes of these motions, the factual allegations of the complaint must be taken as true, together with reasonable inferences that may be drawn therefrom in plaintiff's favor. See, e. g., *Drachman v. Harvey*, 453 F.2d 722, 724 (2d Cir. 1972); *Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir. 1967).

## I.

### Factual Background

In December 1974, plaintiff was hired by the City of Meriden to serve as an attendance supervisor at Maloney High School. He was paid with federal funds allocated to the city by the Office of Manpower Planning of the state Department of Labor as a "prime sponsor," administering a public service employment program under Title II of CETA, 29 U.S.C. §§ 841–851.

On January 8, 1976, a high school official verbally notified plaintiff that he was being terminated from employment.[3] On January 16, plaintiff wrote to the city Director of Personnel, defendant Edward Papandrea, requesting a hearing on his termination. Mr. Papandrea offered to place plaintiff in another CETA position with the city, but plaintiff declined this offer because he would have received less pay in the proposed position, and would not have utilized the counselling skills he had developed as an attendance supervisor. On January 22, plaintiff was terminated from the CETA program.

Plaintiff renewed his written request for a hearing. An investigation was conducted by a state Public Employment Specialist, who concluded that the termination proce-

---

1. The regulations governing CETA programs were revised on June 25, 1976, effective July 26, 1976. See Comprehensive Manpower Program and Grants to Areas of High Unemployment, Miscellaneous Amendments, 41 Fed.Reg. 26333–84 (1976).

2. Also before the court are cross motions for summary judgment. In the light of this court's ruling on the motions to dismiss, it is unnecessary to consider these motions. Since "matters outside the pleading" have not been presented to the court on the motion to dismiss, it is not appropriate to treat that motion as one for

summary judgment. See Fed.R.Civ.P. 12(b). Indeed, none of the parties have submitted affidavits on the motions for summary judgment to establish that there is no genuine issue as to any material fact.

3. Defendants apparently dispute this allegation. According to their briefs, plaintiff was initially told that he would be transferred to another position, and was terminated only after he refused to accept two other positions that were offered to him. Again, for purposes of this motion, plaintiff's account is taken to be true.

dure was proper. The city refused to provide plaintiff with a hearing, and he then requested a hearing from the state Office of Manpower Planning. A hearing was held on June 23, 1976, before Frank R. Bochniewicz, Hearings Officer, who also concluded that plaintiff had been terminated properly.

On July 15, 1976, plaintiff appealed this decision through his counsel by filing a complaint with the Acting Regional Administrator For Employment and Training of the United States Department of Labor, Luis Sepulveda. See 29 C.F.R. §§ 98.40–98.45. He contended that the following regulation, 40 Fed.Reg. 22673, 22715 (1975) (current version at 29 C.F.R. § 98.26(a)), required the city to give him prior written notice of his termination, as well as an opportunity to respond to any charges against him:

> "Each prime sponsor or eligible applicant shall establish a procedure for resolving any issue arising between it (including any subgrantee or subcontractor of the prime sponsor) and a participant under any Title of the Act. Such procedures shall include an opportunity for an informal hearing, and a prompt determination of any issue which has not been resolved. When the prime sponsor or eligible applicant proposes to take an adverse action against a participant, such procedures shall also include a written notice setting forth the grounds for any adverse action proposed to be taken by the prime sponsor or eligible applicant and giving the participant an opportunity to respond." [4]

In the language of the regulations, the state Department of Labor was a "prime sponsor" and an "eligible applicant," see 29 U.S.C. §§ 812(a), 844(a); 40 Fed.Reg. 22673, 22683, 22684 (1975) (current version at 29

C.F.R. § 94.4(t), (oo)); the City of Meriden was a "program agent" to which the state had delegated its responsibilities, see 29 U.S.C. § 844(d)(1), (2); 40 Fed.Reg. 22673, 22684 (1975) (current version at 29 C.F.R. § 94.4(qq)); and plaintiff was a "participant," see id. (current version at 29 C.F.R. § 94.4(kk)).

Based on his review of plaintiff's file, Mr. Sepulveda concluded that the regulation had been violated. On October 4, 1976, he informed the state Department of Labor that it would be required to reinstate plaintiff to an identical or similar position with the Meriden CETA program by October 15. Plaintiff was reinstated in a position with the Meriden Department of Youth Services on October 15, 1976.

Plaintiff's appeal to the Regional Administrator had not specified the nature of the remedies that were requested. On October 18, 1976, plaintiff's counsel wrote again to Mr. Sepulveda, requesting that the city be required to provide plaintiff with back pay and other benefits lost due to his termination in January.[5] On November 15, Mr. Sepulveda responded as follows:

> "After this office reviewed your client's appeal of the Balance of State Connecticut Prime Sponsor decision, we concluded that according to the regulations (29 CFR 98.26) Mr. Maloney was not properly terminated. As such, we ordered his reinstatement into a position the same as or similar to the one he held at the time of his termination. Award of back wages is not mandatory in cases of wrongful termination. After careful consideration of this case we made no recommendation of back pay. If either the prime sponsor or the City of Meriden desire to award back pay to your client they may do so of their own volition, as long as non-CETA funds are used."

---

**4.** As amended in 1976 see note 1 *supra*, the last sentence quoted now reads, "When the prime sponsor or eligible applicant *takes* an adverse action against a participant, such procedures shall also include a written notice . . . ." 29 C.F.R. § 98.26(a) (emphasis added). Thus, under the current regulation, written notice may be provided at the time an employee is terminated. The court's attention, of course, is

focused on the regulation in effect at the time plaintiff was terminated.

**5.** In addition to back pay, counsel requested a longevity increment in pay which plaintiff would have received had he continued working. He also requested that plaintiff be assigned to a job with a ten-month work schedule.

He told plaintiff's counsel to direct any further inquiries to the state Director of Manpower Planning. On December 3, plaintiff's counsel wrote to the Director of Manpower Planning, defendant Olive Sheehan, repeating his request for back pay. According to plaintiff, no response to this letter was ever received.

On February 16, 1977, plaintiff resigned from his position in the CETA program, effective March 1. This action was filed on February 28, 1977.

## II.

### Jurisdiction

Plaintiff has pleaded two causes of action, one of which is said to arise from the CETA statute and regulations, and one from the Constitution. He claims that the court has subject matter jurisdiction because the matter in controversy arises under federal law and involves more than $10,000, 28 U.S.C. § 1331(a); because it arises under an Act of Congress regulating commerce, id. § 1337; and because he seeks to redress the deprivation under color of state law of a right secured by the Constitution, id. § 1343(3). Personal jurisdiction is not contested, but defendants argue that none of these statutes endows the court with jurisdiction over the subject matter of this action.

"Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other. *The Fair v. Kohler Die Co.*, 228 U.S. 22, 25 [33 S.Ct. 410, 57 L.Ed. 716] (1913)." *Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379–1380, 39 L.Ed.2d 577 (1974). The question of whether the court has jurisdiction to decide the merits of a case must not be confused with the question of whether relief can be granted:

"[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. *Swafford v. Templeton*, 185 U.S. 487, 493, 494, [22 S.Ct. 783, 46 L.Ed. 1005;] *Binderup v. Pathe Exchange*, 263 U.S. 291, 305–308, [44 S.Ct. 96, 68 L.Ed. 308.]" *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (footnote omitted).

To resolve this issue, it is necessary only to consider 28 U.S.C. § 1343(3).[6] Plaintiff contends that the CETA regulation conferred upon him an expectation of continued employment which was sufficient to constitute a property interest in his CETA position, and that his termination deprived him of this property right without due process of law. In addition, he argues that he was deprived of a liberty interest in pursuing his chosen occupation. A cause of action arises under 42 U.S.C. § 1983[7] to redress the deprivation of either liberty or property without due process. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 542–

---

6. 28 U.S.C. § 1343(3) provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .''

7. 42 U.S.C. § 1983 reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.''

52, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Section 1343(3) confers jurisdiction to entertain plaintiff's claim if it is "of sufficient substance to support federal jurisdiction." *Hagans v. Lavine, supra,* 415 U.S. at 536, 94 S.Ct. at 1378.

> "'A claim is insubstantial only if "'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" *Ex parte Poresky* [290 U.S. 30, 32 [54 S.Ct. 3, at 4, 78 L.Ed. 152] (1933)], quoting from *Hannis Distilling Co. v. Baltimore* [216 U.S. 285, 288 [30 S.Ct. 326, 54 L.Ed. 482] (1910)]; see also *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105–106 [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); *McGilvra v. Ross,* 215 U.S. 70, 80 [30 S.Ct. 27, 31, 54 L.Ed. 95] (1909).' *Goosby v. Osser,* 409 U.S. 512, 518 [93 S.Ct. 854, 858–859, 35 L.Ed.2d 36] (1973)." *Id.,* 415 U.S. at 538, 94 S.Ct. at 1379.

■ The constitutional issue raised by this complaint is not an insubstantial one. This court holds, *infra,* that plaintiff has not been deprived of a liberty or property interest cognizable under the due process clause. But there is no Supreme Court decision "specifically dealing with this or any similar regulation and settling the matter one way or another." *Id.,* 415 U.S. at 539, 94 S.Ct. at 1380. In the absence of clearly controlling authority from the highest federal court, plaintiff's constitutional claim cannot be considered frivolous or insubstantial.

■ Since § 1343(3) confers jurisdiction over plaintiff's constitutional claim, the court also has pendent jurisdiction over plaintiff's claim under CETA and the accompanying regulations. *See id.,* 415 U.S. at 543, 94 S.Ct. 1372; 1 *Moore's Federal Practice* ¶ 0.62[9] at 700.32 (2d ed. 1948 & Supp.1977). Thus the court's subject matter jurisdiction extends to both causes of action asserted here.

## III.

### Claim For Which Relief Can Be Granted

■ This action does not challenge the grounds for plaintiff's termination from CETA employment, but only the procedure by which it was accomplished. Plaintiff was given a post-termination hearing where he could have responded to any charges against him. His claim is that he was entitled to written notice of the grounds for termination *before* he was terminated. The regulation then in force required written notice setting forth grounds for "any adverse action proposed to be taken" against a CETA program participant, as well as an opportunity to respond. See text accompanying note 4 *supra.* Dismissal from employment is clearly "adverse action," and the reference to "proposed" action implies that written notice is required *before* action is taken. Plaintiff does not allege that he had no prior opportunity to respond to reasons given for his dismissal, so only the written notice requirement is at issue here. Taking the allegations of the complaint as true, this requirement was obviously not met.

The remaining questions are whether this violation of a federal regulation also constitutes a violation of the due process clause, whether an implied remedy at law or equity exists, whether that remedy includes damages and what measure of damages, and whether it is a remedy that can be sought in this court. To deal with these questions in an orderly fashion, each of the sources claimed for plaintiff's causes of action will be examined in turn.

### A. The Claim Under the Statute

The Act contains several provisions dealing with the employment of program "participants" by participating agencies. Discrimination on enumerated grounds is prohibited. 29 U.S.C. §§ 848(f), 991(a). Participants in Title II programs must be "unemployed" or "underemployed" persons as defined in the Act, *see id.* §§ 845(c)(20), 981(a)(11), (12), and must reside in an area qualifying for assistance, *see id.* § 845(c)(3). Preference must be given to certain veter-

ans and to persons most in need of assistance. *See id.* § 845(c)(5), (7). The Act prescribes minimum and maximum wage levels for participants, *id.* § 848(a)(2), (3), and requires that they receive the same fringe benefits as other employees of the same employer, *id.* § 848(a)(4). It requires that participants be notified before employment commences of their rights and benefits in connection with CETA employment. *Id.* § 848(a)(8). But it contains no further pronouncements establishing any such rights or benefits. Responsibility for such matters is delegated to the Secretary, who is directed to

> "prescribe regulations to assure that programs under this subchapter have adequate internal administrative controls, accounting requirements, personnel standards, evaluation procedures, and other policies as may be necessary to promote the effective use of funds."

*Id.* § 848(d); *see id.* § 982(a). There is no language in the statute explicitly controlling the procedures for termination of program participants.

■■ The complaint states that defendants have "violated the statutory purpose and frustrated the legislative intent of employment opportunities provided by CETA." Complaint, ¶ 24. Congress' purpose in enacting Title II of CETA was "to provide unemployed and underemployed persons with transitional employment in jobs providing needed public services . . . to enable such persons to move into employment or training not supported under this subchapter." 29 U.S.C. § 841. But Congress' purpose to provide employment opportunities does not by itself give any particular individual a right to a CETA job. Nor does it imply that administration of the employment opportunities created by the

Act must conform to procedural requirements. The power to establish such requirements was delegated to the Secretary in § 848(d), *supra.* No statutory requirement, explicit or implicit, has been violated here.

### B. *The Claim Under the Regulations*

■ As was discussed above, the complaint states a violation of a regulation promulgated by the Secretary, 40 Fed.Reg. 22673, 22715 (1975) (current version at 29 C.F.R. § 98.26(a)). The CETA regulations establish no explicit remedy for such a violation. When certain conduct is prohibited by law, courts sometimes hold that the law has implicitly created a cause of action to remedy the injury caused by such conduct. *See generally Cort v. Ash,* 422 U.S. 66, 78–80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In this instance, however, it is unnecessary to decide whether plaintiff has a back pay remedy under the CETA regulation. For even if such a remedy exists, it can only be obtained through procedures established within the Department of Labor.

■ These procedures, established by the Secretary pursuant to 29 U.S.C. §§ 848(d) and 982(a), *supra,* govern "the receipt, investigation, hearing and determination of questions of noncompliance with the requirements of the Act and the regulations promulgated under the authority of the Act." 29 C.F.R. § 98.40(a). They include the filing of a complaint with a Regional Administrator, as was done in this case. *Id.* §§ 98.42–98.44. When there is substantial evidence establishing probable cause that a violation of the Act or regulations has occurred, the regulations require that an opportunity for a public hearing be extended. *Id.* §§ 98.45(a), 98.46(b).[8] Such a hearing is

---

8. "The RA will make a prompt investigation of each formal allegation filed as provided in this part. The investigation may include, where appropriate, a review of pertinent practices and policies of any grantee, the circumstances under which the possible noncompliance with the Act or regulations issued thereunder occurred, and other factors relevant to a determination as to whether the respondent has failed to comply with requirements of the Act, the regulations, and the Comprehensive Manpower Plan.

"(1) If an investigation pursuant to paragraph (a) of this section indicates to the RA a failure to comply with the Act, the regulations, or the Comprehensive Manpower Plan, the RA will so inform the respondent and the complainant and the matter, will if possible, be resolved by informal means. If informal resolution does not occur within a reasonable

held before an Administrative Law Judge or other hearing officer, whose decision may be appealed to the Secretary. *Id.* §§ 98.47–98.48.[9] With one exception not relevant here, the regulations provide that administrative action taken under the Act is not subject to judicial review. *Id.* § 98.49.[10] Thus the same set of regulations which establish plaintiff's right to written pre-termination notice also preclude him from enforcing that right in a judicial forum.

■■ The existence of a regulation denying judicial review does not by itself determine the question. The Administrative Procedure Act ["APA"], 5 U.S.C. §§ 701–706, embodies a presumption that persons aggrieved by federal agency action (as plaintiff was aggrieved by the Regional Administrator's denial of back pay) are entitled to judicial review of that action. *Abbott Laboratories v. Gardner,* 387 U.S. 136,

140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *See* 5 U.S.C. § 702. If § 98.49 conflicts with the APA, the statute controls and judicial review must be permitted. However, the APA by its own terms does not apply

". . . to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law."

5 U.S.C. § 701(a).

The statute in this case is silent on the question of judicial review. CETA explicitly provides for judicial review of the Secretary's actions in approving, disapproving or revoking comprehensive manpower plans, 29 U.S.C. § 819, but says nothing about review of other agency actions taken under CETA. Nonetheless, it must be concluded that agency actions with regard to termination of CETA program participants have

---

period of time, action will be taken as provided in this part or as otherwise provided by law.

"(2) If an investigation does not warrant action pursuant to subparagraph (a)(1) of this section, the RA will so inform the respondent and the complainant in writing." 29 C.F.R. § 98.45(a). "RA" refers to the Regional Administrator for Employment and Training Administration, or to his designee. *Id.* § 94.4(uu).

"An opportunity for a public hearing shall be extended in each of the following instances:

. . . . .

"(b) After the completion of an investigation, pursuant to § 98.45, or any formal allegation which indicates there is substantial evidence of facts supporting a conclusion of probable cause that a violation of the Act, or regulations issued pursuant thereto, has occurred or is occurring, or is about to occur, and the matter has not been resolved by informal means . . . .."

*Id.* § 98.46(b). Prior to their amendment in 1976, see note 1 *supra,* the cited regulations referred to the Assistant Regional Director For Manpower instead of the Regional Administrator. *See* 40 Fed.Reg. 22673, 22682, 22718 (1975). In all other respects, they have remained unchanged.

9. Since the Regional Administrator found a failure to comply with the regulations, and since the matter was not informally resolved, the Department of Labor was required to extend an opportunity for a public hearing in this case. See note 8 *supra.* Plaintiff did not re-

quest such a hearing in order to appeal the Regional Administrator's decision denying him back pay. Thus it is possible to conclude that he failed to exhaust administrative remedies and is precluded from bringing this action for that reason. *See Serghini v. City of Richmond,* 426 F.Supp. 326 (E.D.Va.1977); *cf. Blanton v. State Univ. of N. Y.,* 489 F.2d 377, 383–84 (2d Cir. 1973); *Eisen v. Eastman,* 421 F.2d 560, 569 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). Since I conclude on other grounds that there can be no judicial review of the administrative decision in this case, it is unnecessary to consider whether the exhaustion requirement applies.

10. Section 98.49 reads:

"Action taken pursuant to Section 108 of the Act is subject to judicial review as provided in Section 109 of the Act. All other action initiated under the Act and regulations issued thereunder shall be final upon a determination by the Secretary."

Section 108 of the Act, 29 U.S.C. § 818, concerns the review and revocation of comprehensive manpower plans submitted under Title I of the Act.

The intent of § 98.49 is to limit parties such as plaintiff to the remedies available within the Department of Labor. In this case there was no "determination by the Secretary," because no appeal was taken from the Regional Administrator's decision. That decision became the final decision of the Department, and § 98.49 must be construed to preclude judicial review.

been "committed to agency discretion by law."

■ The question of whether a species of agency action is committed by law to agency discretion is frequently a difficult one. Where the substantive law governing agency action is contained in a federal statute, this question may pose a tangled problem of statutory construction. *See generally* 4 K. Davis, *Administrative Law Treatise* § 28.16 (1958 & Supps. 1970 & 1976). However, the problem is simplified where the statute contains no substantive rule governing the action at issue. If Congress has delegated to an officer or agency the power to make the rules governing a given type of action, it should be clear in the absence of contrary indications that it has also committed the administration or enforcement of those rules to agency discretion. The Supreme Court has stated:

> "The legislative history of the Administrative Procedure Act indicates that [the exception for action 'committed to agency discretion'] is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971).

Here there is not even a statutory rule drawn in broad terms; there is simply no statutory law or apparent Congressional policy on the subject at all. Congress delegated the entire area of program management to the Secretary in 29 U.S.C. § 848(d), *supra.* In so doing, it directed him to promulgate regulations that would "promote the effective use of funds," *id.; see also id.* § 983(14); but did not express concern for the procedural rights of program participants. Under the Supreme Court's dictum in *Citizens To Preserve Overton Park, supra,* the APA does not apply; and 29 C.F.R. § 98.49 precludes review of the Regional Administrator's action in this court on a claim based on the regulations. Therefore the claim based on a violation of the regulations must be dismissed.

## C. *The § 1983 Claim*

Plaintiff also claims that his termination deprived him of liberty and property without due process of law. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 565, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

■ Plaintiff asserts a deprivation of liberty because as a result of his termination his "reputation and his ability to pursue his profession were injured." Amendment To Complaint, ¶ 27. The right to pursue one's occupation is an interest in liberty, *see Board of Regents v. Roth, supra,* 408 U.S. at 572, 92 S.Ct. 2701, and in some circumstances the termination of public employment may involve a deprivation of liberty. For example, an employee may be publicly subjected to charges that injure his reputation, *Lombard v. Board of Education of New York,* 502 F.2d 631, 637 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); or there may be such charges in his files which could be disclosed to prospective employers, *Velger v. Cawley,* 525 F.2d 334, 336–37 (2d Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). This plaintiff, however, has pleaded no specific facts establishing a possible stigma that will affect his future employment opportunities. "[I]n the absence of a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation, it cannot be said that a right of personal liberty is involved." *Tichon v. Harder,* 438 F.2d 1396, 1402 (2d Cir. 1971) (footnote omitted); *see Board of Regents v. Roth, supra,* 408 U.S. at 573–74, 92 S.Ct. 2701; *Wahba v. New York University,* 492 F.2d 96, 98 n.2 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Canty v. Board of Education of New York,* 448 F.2d 428, 430 (2d Cir. 1971), *vacated and remanded,* 408 U.S. 940, 92 S.Ct. 2874, 33 L.Ed.2d 765; *on remand,* 470 F.2d 1111 (2d

Cir. 1972), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2301, 36 L.Ed.2d 973 (1973). While allegations concerning plaintiff's job performance were apparently involved in this case, there can be no infringement of his interest in liberty if those allegations are not disclosed to other prospective employers. *Compare Ortwein v. Mackey,* 511 F.2d 696, 699 (5th Cir. 1975); *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196, 1199 (8th Cir. 1974) *with Velger v. Cawley, supra.* Nor is plaintiff entitled to procedural due process to defend himself against stigmatizing charges if he does not allege that the charges are false or misleading. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam).

 Plaintiff bases his claim of a property interest on the CETA regulation which required written notice and an opportunity to respond to charges before termination. He argues that the regulation gave him a right to continued employment unless and until these procedures were followed. This argument, however, loses sight of "the decisive distinction between procedure and substance." *Shirck v. Thomas,* 486 F.2d 691, 692 (7th Cir. 1973). A law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged. For example, if discharge can only be for "just cause," an employee has a right to continued employment until there is just cause to dismiss him. *See Arnett v. Kennedy,* 416 U.S. 134, 151–52, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (opinion of Rehnquist, J.). But the CETA regulation allowed an employer to discharge an employee for any reason or for no reason at all. A guarantee of procedural fairness does not establish a property interest. *Lake Michigan College Federation of Teachers v. Lake Michigan Community College,* 518 F.2d 1091, 1095–96 (6th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976); *Suckle v. Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir. 1974); *Shirck v. Thomas, supra; Weathers v. West Yuma County School District R–J–1,* 387 F.Supp. 552, 558 (D.Colo. 1974), *aff'd,* 530 F.2d 1335 (10th Cir. 1976).

The allegations of the complaint do not establish a deprivation of a liberty or property interest to which the due process clause may apply. Plaintiff has thus failed to state a claim under the Constitution. Since his cause of action based on the statute and regulations also fails to state a claim for which relief can be granted, the motions to dismiss are hereby granted.

SO ORDERED.