CETA WORKERS' ACTION COMMITTEE et al, Plaintiffs,

v.

The CITY OF NEW YORK et al, Defendants.

No. 76 Civ. 4934–CSH.

United States District Court, S. D. New York.

Feb. 27, 1981.

Merrick T. Rossein, Migdalia Maldonado, National Employment Law Project, Inc., New York City, Mark H. Spires, Robert L. Becker, Queens Legal Services Corp., Long Island City, N. Y., for plaintiffs; John C. Gray, Jr., Yvonne Lewis, Brooklyn Legal Services Corp. B, Brooklyn, N. Y., of counsel.

John S. Martin, Jr., U. S. Atty., Allen Schwartz, Corp. Counsel, New York City, for defendants; Leslie R. Bennett, Asst. U. S. Atty., Stanley Buchsbaum, Janice C. Griffith, Marjorie D. Wiener, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Individual plaintiffs Carter, Killings and Kearer were employed by the City of New York under Title II of the Comprehensive Employment and Training Act of 1973, as amended, 29 U.S.C. § 801 et seq. ("CETA" or "the Act"). They were discharged under circumstances which plaintiffs allege violated constitutionally protected property interests, as well as the statute and federal regulations promulgated thereunder. The individual plaintiffs, joined by the CETA Workers' Action Committee, commenced this action against the City and certain of its officials (the City defendants) and certain officials of the United States Department of Labor (the federal defendants). The public official successors to the original individual defendants are automatically substituted as parties. Rule 25(d), F.R. Civ.P. Plaintiffs prayed for class action certification, which this Court granted in its Memorandum Opinion of July 28, 1978, familiarity with which is assumed. The certified class includes "(a) all persons who are currently enrolled, or become so prior to judgment in this action, under Titles II and VI in the CETA program administered by the City of New York, and (b) all persons who have been terminated for cause from such titles." Mem. op. at 26. The complaint seeks a declaration that the terminated plaintiffs' and class members' rights were violated, on the constitutional, statutory and regulatory theories, and prays for reinstatement, back pay, and hearings into the circumstances resulting in discharge. Plaintiffs further seek an order directing implementation by the City of hearings prior to termination of CETA employees, and an order enjoining payment of federal CETA funds to the City until such procedures are instituted.

Subsequent to class certification, the City defendants moved for summary judgment dismissing the complaint in its entirety. Plaintiffs cross-moved for partial summary judgment on their constitutional and statutory/regulatory claims. Resolution of these motions was deferred, as the three parties sought to negotiate an overall settlement. Plaintiffs and the federal defendants have now agreed upon a settlement, which the Court is asked to approve, after appropriate notice to the class members. Rule 23(e), F.R.Civ.P. However, plaintiffs and the City defendants could not compose their differences, and so the cross-motions for summary judgment have been revived. In addition, the City defendants, given their view of the merits as expressed in their summary judgment motion, and in view of the impact upon the City of the federal settlement if approved, oppose the requested judicial sanction of that settlement.

On a constitutional level, plaintiffs' claim that they were entitled to pre-termination hearings implicates the due process clauses of the Fifth and Fourteenth Amendments. In addition, plaintiffs Carter and Kearer allege that they were discharged in reprisal for their exercise of their right of free speech, in violation of the First Amendment.

I first consider plaintiffs' and the City defendants' summary judgment cross-motions, and then the motions of plaintiffs and federal defendants to confirm the settlement negotiated by those parties, opposed by the City defendants.

## I.

The original CETA legislation was the Comprehensive Employment and Training

Act of 1973, Pub.L. No. 93–203, 87 stat. 839, codified at 29 U.S.C. §§ 801 *et seq.* CETA is a multi-billion dollar program to provide job training and employment opportunities to low income persons. The program is administered at the federal level by the Secretary of Labor. State and local units of government may become "prime sponsors" and assume responsibility for administering CETA in a designated area, 29 U.S.C. § 812. Since receiving its initial CETA grant, the City of New York has acted as a prime sponsor.

On July 29, 1974, the United States Department of Labor approved the City's application for a grant to operate a public service employment program under Title II of CETA, for the period from July 1, 1974 to June 30, 1975. CETA authorizes the Secretary of Labor to contract with eligible applicants such as the City "in order to make financial assistance available for the purpose of providing transitional employment for unemployed and underemployed persons in jobs providing needed public services"; the ultimate legislative objective is "enabling such persons to move into employment not supported under this chapter." 29 U.S.C. § 962(a). The City's original grant application discussed the placement of CETA-subsidized public service employees in unsubsidized employment. In respect of unsubsidized public employment, the City's application, approved by the Secretary by virtue of the issuance of the grant, recited that "[m]ovement of public service employees into unsubsidized public service jobs will occur as CETA Title II enrollees take civil service examinations and new hires into civil service positions are drawn from lists of those who have passed the appropriate examination." The City application further observed: "Entry into permanent civil service positions is through civil service examinations. The City is required by law to hire employees into available vacancies on the basis of the highest passing grades achieved." In these circumstances, the City expressed its inability to forecast the number of CETA trainees who would ultimately be assimilated into unsubsidized public employment. As for the private sector, the City's grant application recited: "Placement of as many enrollees as possible into unsubsidized private sector jobs is a primary objective of the City"; procedures intended to achieve that objective are set forth in the grant.

The City implemented its CETA program during the fall of 1974 and the spring of 1975. On June 30, 1975, the Department of Labor approved a modification to the City's grant. The amendments submitted by the City pertinent to this litigation dealt, *inter alia,* with the status of CETA participants in City employment. The grant modification recites: "The current status of all CETA participants in City employment is provisional." A provisional status impacts directly upon an individual's right to a pre-termination hearing. Thus the grant modification recites:

"Under State Civil Service Law, provisional or temporary employees whether unsubsidized or not are not entitled to a hearing prior to dismissal or to placement upon a preferred eligible list prepared in the case of lay-off for possible re-appointment. Such rights can be provided only to permanently appointed employees, generally those in competitive class who have been appointed after competitive examination."

Further addressing this subject, the grant modification recites:

"Several means of obtaining resolution of complaints are open to these employees. At the first level, a participant may request a decision in his or her favor by the EEA/CETA coordinator in the employer agency. Secondly the incumbent can contact EEA/CETA II Administration. Participants occupying titles covered by collective bargaining agreements—1500 of the current EEA participants—can bring the issue to their union. The City's EEO guidelines provide that if the matter of a complaint is related to equal employment opportunity the participant will be able to bring the issue to the attention of the EEO officer in his or her agency. However, CETA Title II participants cannot be assured of formal hearing procedures

on the issue of termination from a CETA II position, because Section 75 of the State Civil Service Law does not apply to employees who are provisional, probationary or temporary. To establish formal hearings for CETA II employees would depart from the principle that CETA II employees enjoy the same rights and benefits as other similarly situated employees; in effect, it would grant CETA II incumbents more rights than are accorded other provisional or temporary employees." (footnote omitted).

The quoted analysis reflects the fact that, under New York law, temporary and provisional appointees, employed without civil service examination, do not acquire tenure and its accompanying right to pre-disciplinary or pre-termination hearings on stated charges. See *Russell v. Hodges*, 470 F.2d 212 (2d Cir. 1972).

CETA contains no specific provisions dealing with the dismissal of CETA employees. However, the Secretary has rule-making authority under the statute, 29 U.S.C. §§ 848(d), 982(a); and, in May, 1975, he published revised regulations effective July 1, 1975. One of those regulations, 29 C.F.R. § 98.26, reads in part as follows:

"(a) Each prime sponsor or eligible applicant shall establish a procedure for resolving any issue arising between it (including any subgrantee or subcontractor of the prime sponsor) and a participant under any Title of the Act. Such procedures shall include an opportunity for an informal hearing, and a prompt determination of any issue which has not been resolved. When the prime sponsor or eligible applicant proposes to take an adverse action against a participant, such procedures shall also include a written notice setting forth the grounds for any adverse action proposed to be taken by the prime sponsor or eligible applicant and giving the participant an opportunity to respond.

In July, 1975, the City implemented its "Participant Complaint Review Procedures," and submitted them to the Department of Labor as a part of its CETA Affirmative Action Plan. The City's procedures covered two general areas: complaints received on wages, fringe benefits and the like; and complaints on adverse actions that might result in termination. The latter procedures, whose full text appears in the margin,[1] provide for notifica-

---

1. "AGENCY ADVERSE ACTIONS PROCEDURES

"B. Where a participant's performance is unsatisfactory to an agency, the following procedures must be established since such performance may result in eventual termination:

"1. Supervisors shall maintain written documentation of unsatisfactory performance and of steps taken, including those set forth in paragraph 2.

"2. The participant should be advised of unsatisfactory performance and it is recommended that informal discussions be held with the participant to resolve the matter.

"a. The CETA Coordinator shall be advised of such action and shall commence maintaining a log of such reports.

"3. If the agency eventually determines that termination is necessary, the participant shall be advised in writing of termination for unsatisfactory performance and that a complaint may be filed with the Commissioner of the Department of Employment.

"a. A copy of such letter shall be sent to the CETA Coordinator.

"4. Within 10 days of receipt of a complaint as to termination, the Director of CETA Title

II and VI Programs shall consult with the employing agency to verify implementation of these procedures.

"5. Upon verification, the Commissioner of the Department of Employment shall without undue delay, advise the participant that the procedures herein have been complied with, and this shall constitute the final administrative determination of the complaint.

"6. Copies of such determination and notification of the participant's rights under federal regulations set forth in paragraph 6 shall be sent to the participant, registered mail, return receipt requested, and to the agency.

"7. Any participant still aggrieved may, within 30 days after the issuance of the final determination file a formal written complaint with the Secretary of Labor in accordance with the provisions of the CETA regulations (29 CFR § 98.42).

"8. Where the agency determines that immediate termination is necessary, and the procedure set forth in paragraph 2 cannot be implemented, the agency must maintain written documentation in support.

"a. In all such cases, the procedure set forth in paragraph 3 shall be complied with. Upon

tion and review of adverse action, but, consistent with the City's stated policy, do not provide for a pre-termination hearing, with the rights of notification of charges, confrontation of witnesses, and representation.

In the spring of 1976, the Department of Labor notified the City that its complaint procedures did not meet the requirements of the Secretary's regulation, § 98.26(a). Meetings and correspondence between City and federal official ensued. On June 30, 1976, during the pendency of this dialogue, the Department extended the City's CETA grant from July 1, 1974 to January 31, 1977. The City formulated revised complaint procedures, which still fell short of requiring a full pre-termination hearing. The regional administrator of the Department of Labor expressed approval of the revised procedures; but upon further review the Department of Labor expressed continuing dissatisfaction with them, and by letter dated July 5, 1977 commenced administrative action against the City defendants, directing the City to review all cases of CETA participants who were terminated for reasons other than funding and unavailability, and who also complained to the City or the Department of Labor about their terminations. The Department of Labor further directed the City to reinstate with back pay any participant who was erroneously terminated. The City proposed further revisions in its review procedures.

Plaintiffs, who had commenced this action in 1976 in the circumstances about to be related, first learned of the Department of Labor's administrative action in January of 1978. Since plaintiffs viewed the further revisions attendant upon the Department of Labor's administrative action as deficient under the Constitution and the regulation, they objected to their implementation, and press this litigation, demanding more formal and detailed pre-termination hearing procedures.

Plaintiff Carter's CETA employment with the City was terminated on November 14, 1975, on the stated basis of insubordinate behavior. In accordance with the complaint procedures then in effect, Carter filed a complaint with the CETA coordinator; met with the director of administrative services, Human Resources Administration; filed a complaint with the City Department of Employment; and filed a further complaint with the United States Department of Labor, which in declining to intervene, advised Carter: "Procedures implemented by the Prime Sponsor were consistent with guidelines applicable to other employees similarly employed."

Plaintiff Killings was terminated on January 19, 1976, for the stated reason of repeated and unexcused absences from the job. The City Department of Employment and United States Department of Labor, with whom Killings filed complaints, sustained the termination.

Plaintiff Kearer was terminated on August 20, 1976, for the stated reasons of insubordinate behavior and abusive comments to supervisors. While she commenced the administrative review provided for by the City's procedures, that review has not been completed, pending this litigation.

## II.

■ Plaintiffs assert, as alternative bases for relief, § 98.26 of the regulations, and constitutional due process. The parties debate the meaning and effect of the regulation at length in their briefs; but it is now apparent that no viable claim may be based upon the statute or the regulations. That follows from *CETA Workers' Organizing Committee v. The City of New York*, 617 F.2d 926 (2d Cir. 1980), which holds that no private cause of action, express or implied, exists to redress alleged violation of CETA

receipt of a complaint, the Director of CETA Title II and Title VI Programs shall within 10 days consult with the agency to verify documentation and termination.
"b. Upon such verification, the Commissioner shall without undue delay, advise the

participant that the agency determination has been verified and this shall constitute the final administrative determination of the complaint. Paragraphs 6 and 7 shall be applied."

or its regulations; and from *Maloney v. Sheehan*, 453 F.Supp. 1131 (D.Conn.1978), which rejected due process claims for back pay based upon the statute and, specifically, § 98.26 of the regulations.

In *CETA Workers*, the proposed plaintiff class complained of alleged inadequate training or services under the Act, failure to prepare individual "employment development plans," lack of efforts to bring about placement in unsubsidized employment, and lack of services by a state employment service, all in violation of the statute and regulations. The Second Circuit, affirming dismissal of the complaint for lack of subject matter jurisdiction, held that Congress in CETA "has established an elaborate system of administrative review, which would appear intended to be exclusive." 617 F.2d at 934–35.

■ The same system of administrative review exists to consider alleged violations of § 98.26. Indeed, the record in this case reveals that the federal authorities instituted administrative action against the City to correct perceived violations of the regulation, and the City responded to that action. Plaintiffs are not satisfied with the response, and commenced this action to complain that both federal and City defendants failed to comply with the Secretary's regulation. But *CETA Workers* clearly holds that no private cause of action exists in the district courts to consider that claim. To hold otherwise would impermissibly disrupt the administrative review procedures intended by Congress as exclusive.

*Maloney v. Sheehan, supra*, is instructive because it presages the holding in *CETA Workers*, and does so within the context of a claim based upon § 98.26 of the regulations. Plaintiff was dismissed by the City of Meriden from his CETA position without a pre-termination hearing. The United States Department of Labor's regional administrator decided that plaintiff's termination violated § 98.26. The Department ordered the city to reinstate plaintiff to the CETA program, but made no recommendation that plaintiff be paid back pay. Plaintiff thereupon commenced an action in dis-

trict court against the city and state administrators of the program to recover back pay. Plaintiff's loss of back pay was alleged to contravene the statute and the regulations, as well as constituting a constitutional deprivation of property. The court dismissed the complaint on defendants' motion. Judge Blumenfeld, in a careful analysis, rejected the claim under the statute because the congressional purpose to provide employment opportunities neither gave a particular individual a right to a CETA job, nor implied that administration of statutorily created employment opportunities "must conform to procedural requirements." 453 F.Supp. at 1138. The power to establish regulations having been delegated to the Secretary, "[n]o statutory requirement, explicit or implicit, has been violated here." *Ibid*. The claim under the regulations failed because the regulatory scheme required that remedies for violation of § 98.26(a), such as back pay, "can only be obtained through procedures established within the Department of Labor"; the Congress "did not express concern for the procedural rights of program participants," and the regulatory scheme "precludes review of the Regional Administrator's action in this court on a claim based on the regulations." *Id.* at 1138, 1140. The same analysis applies to the case at bar.

Because the present plaintiffs' statutory and regulatory claims are coupled with a constitutional claim of sufficient substance to satisfy the criteria of *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), this Court has subject matter jurisdiction over them, *CETA Workers*, 617 F.2d at 935 n. 6; *Maloney*, 453 F.Supp. at 1136–37; but the claims must be rejected for the reasons stated.

■ Plaintiffs also seek to base their statutory claim upon 42 U.S.C. § 1983, whose relationship to CETA was left open in *Hark v. Dragon*, 611 F.2d 11 (2d Cir. 1979) at n. 4. But it is clear that § 1983 provides no vehicle for a statutory claim in this case. Section 1983 "is not a jurisdictional statute; it only fashions a remedy." *Chapman v. Houston Welfare Rights Or-*

*ganization*, 441 U.S. 600, 606, 99 S.Ct. 1905, 1910, 60 L.Ed.2d 508 (1979). In the case at bar, jurisdiction is again conferred by the constitutional claim, 28 U.S.C. § 1343(3), and § 1983 may be invoked under pendent jurisdiction without regard to jurisdictional amount, *Holley v. Lavine*, 605 F.2d 638, 647 (2d Cir. 1979). However, while the Supreme Court in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), extended the reach of § 1983 to claims of injury by the administration of any federal-state cooperative program, whether or not related to equal or civil rights, an exception exists "in cases where the governing statute provides an exclusive remedy for violations of its terms." Powell, J., dissenting at 448 U.S. 22, 100 S.Ct. 2513. As we have seen, CETA and its regulations provide such an exclusive remedy; hence no remedy may be derived from § 1983.

I conclude that plaintiffs cannot assert their claims under the statute and regulations in this Court.

### III.

■ I come, then, to the constitutional claim. Before plaintiffs can establish a right to reinstatement and back pay, they must show that they have property rights recognized by the Constitution of the United States for purposes of procedural due process. Those property rights must come from governing law apart from the Constitution or, in its absence, from the mutual understandings of the parties. *Baden v. Koch*, 638 F.2d 486 at 489 (2d Cir. 1980) citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ An enforceable property right is not established by the record in this case. While plaintiffs stress the salutary social purposes of CETA, and liken the importance of its benefits to participants to those received by welfare recipients, so as to implicate the rule of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and its progeny, Judge Blumenfeld focused more sharply on CETA when he wrote, in *Maloney v. Sheehan, supra*, 453 F.Supp. at 1140:

"Congress relegated the entire area of program management to the Secretary in 29 U.S.C. § 848(d), *supra*. In so doing it directed him to promulgate regulations that would 'promote the effective use of funds,' *id.; see also id.* § 983(14); but did not express concern for the procedural rights of program participants."

Thus *Maloney v. Sheehan* rejected not only the claims under the statute and regulations, but the constitutional claim as well. As Judge Blumenfeld observed 453 F.Supp. at 1141, no constitutional claim of a property interest could be derived from the regulation, § 98.26(a):

"A law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged. For example, if discharge can only be for 'just cause,' an employee has a right to continued employment until there is just cause to dismiss him. See *Arnett v. Kennedy*, 416 U.S. 134, 151–52, 94 S.Ct. 1633, 1642–43, 40 L.Ed.2d 15 (1974) (opinion of Rehnquist, J.). But the CETA regulation allowed an employer to discharge an employee for any reason or for no reason at all. A guarantee of procedural fairness does not establish a property interest."

States and cities, as prime sponsors under CETA, are entitled to a certain measure of "regional flexibility in the administration of CETA," *Hark v. Dragon, supra*, at 611 F.2d 15. In *Hark*, the State of Vermont limited participation in CETA programs in that state to one year, in furtherance of its own rational goals. The Second Circuit rejected the plaintiffs' due process argument "since we find that whatever entitlement plaintiffs enjoy to continued employment, if any, is circumscribed by the durational limitation on employment properly imposed by Vermont CETA." *Ibid.*

In the case at bar, the City of New York made the policy judgment that CETA participants should not be given a property interest in their employment equal to em-

ployees holding civil service tenure, and superior to that of temporary and provisional employees. The City's policy finds some support in CETA itself, which provides in 29 U.S.C. § 848(a)(4) that "all persons employed in public service jobs under this subchapter will be assured of ... working conditions and promotional opportunities neither more nor less favorable than such other employees enjoy." Plaintiffs argue that this section was intended solely to protect CETA participants, but the phrase "neither more nor less favorable" cuts both ways, and a right to pre-termination hearings would appear to fall within the phrase "working conditions and promotional opportunities." However, the case does not turn solely upon the interpretation of this section; the simple fact is that CETA nowhere confers upon participants the procedural rights which plaintiffs claim. In the absence of such a statutory provision, the City was constitutionally at liberty to coordinate the procedural entitlements of CETA participants with those of its unsubsidized employees. *Hark v. Dragon, supra; Hayward v. Henderson,* 623 F.2d 596 (9th Cir. 1980).

While plaintiffs profess to find in the City's regulations and conduct support for a property interest, the argument cannot survive the express disclaimer by the City in its CETA grant application. That declaration made it clear that CETA workers would not be given pre-termination hearing rights comparable to those of tenured, unsubsidized public employees. The actions of certain City agencies, asserted by plaintiffs to be inconsistent with the aforesaid declaration of policy (plaintiffs' main brief at 41), cannot rise to a *Perry v. Sindermann* level of mutual understanding. Cf. *Baden v. Koch, supra* (oral and written statements of city officials, reflecting understanding that chief medical examiner was a tenured employee, insufficient to overcome contrary provision in city charter).

Plaintiffs argue that the phrase "[w]here a participant's performance is unsatisfactory to an agency," which introduces its complaint procedures, is sufficient to create a property interest. It is not. *King v. Sapier,* 47 A.D.2d 114, 364 N.Y.S.2d 652 (4th

Dept. 1975), *aff'd,* 38 N.Y.2d 960, 384 N.Y.S.2d 152, 348 N.E.2d 609 (1976); *Harrison v. Housing Authority of the City of College Park,* 445 F.Supp. 356 (D.Ga.1978); cf. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (city ordinance providing that "a permanent employee may be discharged if he fails to perform work up to the standard of his classification, or if he is negligent, inefficient, or unfit to perform his duties" held, construing North Carolina law, insufficient to confer property right). The N.Y. Civil Service Law, § 75(1)(a) (McKinney 1980), provides that a tenured employee "shall not be removed ... except for incompetency or misconduct after a hearing." Non-tenured employees derive no such rights from a rule that they may be discharged for "unsatisfactory service." *King v. Sapier, supra.*

Plaintiffs' constitutional claim is insufficient in law.

### IV.

■ The First Amendment claims of individual plaintiffs Carter and Kearer are not subject to disposition by summary judgment. The City gives an account of the circumstances of their terminations which, it argues, brings them within the "bickering" rationale of cases such as *Chitwood v. Feaster,* 468 F.2d 359 (4th Cir. 1972), so that the First Amendment is not implicated. But that analysis depends upon the City's perception of the facts, which is put forward in part on the basis of hearsay affidavits, and which the plaintiffs dispute in their own affidavits. These areas of factual dispute cannot be resolved by summary judgment.

### V.

There remains for consideration the proposed settlement between the plaintiff class and the federal defendants. As stated *supra,* the City defendants oppose approval of that settlement.

The settlement recites the federal defendants' review of plaintiffs' allegations, and the federal defendants' decision "to

take appropriate administrative action to assure compliance with CETA and the regulations issued thereunder." The settlement agreement further recites the federal defendants' review and approval of the City's latest revised grievance procedures "governing the termination of current and future CETA participants for disciplinary reasons." These revised grievance procedures include, for the first time, machinery for pre-termination notice of charges and an evidentiary hearing.

Following these preliminary recitations, the settlement agreement between plaintiffs and the federal defendants provides that the federal defendants "shall forthwith take administrative action pursuant to 20 CFR § 676.81 *et seq.*" to compel the City to apply the grievance procedures contained in the new, revised grievance procedures "to the review of the terminations of past CETA participants" in two specific categories: (1) 120 past CETA participants who, after alleged termination for cause, complained to the City and/or the Department of Labor that they did not receive procedural safeguards to which they were entitled; and (2) CETA participants terminated in the past who were not given notice of their rights to contest the termination. This latter category is impossible to quantify with precision. About 25,000 participants have been terminated from the City's CETA program since its inception in 1975. Terminations are classified as "positive" (indicating successful placement in non-subsidized employment), and "non-positive" (indicating termination with or without cause). An effort to identify past CETA participants falling within the second category of the proposed order would require the review of 25,000 files, in an effort to, first, identify the "non-positive" terminations, estimated by the City at about 19,000 since 1975; a further classification of terminations "for cause"; and a further identification of such terminations where no notice of appeal rights was given. City brief at 25–26.

The proposed settlement between the federal defendants and plaintiffs further provides that if a participant in either category "prevails on the merits" and establish-

es that the termination was arbitrary, "the appropriate remedy is back pay and reinstatement or, if a position is not immediately available, the City defendants shall hire on a priority basis those who are eligible for CETA employment." The proposed settlement further provides that limited amounts of City CETA funds may be used to pay back pay awards in respect of category one individuals; the back pay obligations involving employees in the second category would be funded out of the City's general tax revenues.

It is proposed that this Court endorse this settlement between the federal defendants and plaintiffs, after appropriate notice to members of the plaintiff class.

The City's opposition to this procedure is well-founded. For the reasons stated *supra*, plaintiffs have no enforceable remedy in this Court on their statutory, regulatory, or constitutional claims. Having made that determination, this Court becomes *functus officio* as to the merits of the disputes. It would be entirely inappropriate for this Court to continue to play a substantive role, by endorsing the proposed settlement and monitoring compliance with it. It is clear, from the foregoing authorities, that the administrative remedies are exclusive. The federal defendants may pursue, against the City defendants, such administrative remedies as they consider proper, leaving the City defendants to invoke such appellate remedies as may be available under the statute. But this Court, given the legal insufficiency in this forum of plaintiffs' claims, has no appropriate function to perform in the process.

Plaintiffs and the federal defendants argue that the City defendants have no standing to oppose the settlement. The argument exalts form over substance, and must be rejected. The proposed steps to be taken with respect to the two categories of former CETA participants impose the certainty of time-consuming file-searching upon the City, and the possibility, if not likelihood, of substantial awards for back pay, to be funded out of the City's general revenues. The

proposed settlement further provides that if the City defendants do not comply with these procedures, "the Department shall immediately exercise its authority under the CETA Act and regulations to enforce the terms of this Order, shall use all means available to do so, and shall promptly invoke the provisions of 20 CFR § 676.81, *et seq.*" Thus it is clear that the proposed settlement, sought to be made an order of this Court, impacts directly and significantly upon the City defendants. That is sufficient to grant the City defendants standing to object, notwithstanding that the proposed agreement is between a federal agency and other parties. *Caulfield v. Board of Education of City of New York*, 449 F.Supp. 1203, 1222 (E.D.N.Y.1978), *aff'd in part, rev'd in part on other grounds*, 583 F.2d 605 (2d Cir. 1978).

The City defendants correctly observe that the proposed settlement assumes the existence, on behalf of past CETA participants, of a protected property interest in their employment. However, as stated in *Hayward v. Henderson, supra*, 623 F.2d at 597:

> "Recent cases are uniform in their rejection of the contention that the CETA requirement of notice and an opportunity to be heard, 29 C.F.R. § 98.26, gives rise to a constitutionally protected 'property' interest." (citing cases, including *Hark v. Dragon, supra*, and *Maloney v. Sheehan, supra*).

Since it is equally clear that whatever administrative remedies plaintiffs may have are exclusive; that no viable claims exist in this Court; and that the City defendants have standing to object to the proposed settlement and order, the motion to approve the settlement is denied.

## CONCLUSION

The City defendants' motion for summary judgment is granted in part and denied in part.

Plaintiffs' cross-motion for partial summary judgment is denied.

The motion of plaintiffs and the federal defendants to approve the settlement between those parties is denied.

Settle order and judgment in conformity with this opinion on five (5) days' notice.