CONSORTIUM OF COMMUNITY BASED ORGANIZATIONS, Chico Housing Improvement Program, Plaintiffs,

v.

Raymond DONOVAN, in his Capacity as Secretary of Labor; Carolyn Golding, in her Capacity as Regional Administrator for the Department of Labor; John Otero, individually and in his Capacity as Grants Officer for the Department of Labor; Butte County, in its Capacity as Prime Sponsor; James Rackerby, in his Capacity as Director of the Butte County Employment and Training Administration, Defendants.

Civ. No. S-81-135 LKK.

United States District Court,
E. D. California.

Jan. 11, 1982.

Andrew T. Holcombe, Michael R. Bush, Legal Services of Northern Cal., Chico, Cal.

Roberta Ranstrom, Eugene Moriguchi Legal Services of Northern Cal., Sacramento, Cal., for plaintiffs.

William B. Shubb, U.S. Atty., Solomon E. Robinson, Asst. U.S. Atty., Sacramento, Cal., for federal defendants.

Daniel V. Blackstock, Butte County Counsel, Oroville, Cal., for defendants Butte County and James Rackerby.

## ORDER

KARLTON, District Judge.

The instant action is before the court on the federal defendants'[1] motion to dismiss or in the alternative for summary judgment. Defendants Butte County and James Rackerby (hereinafter "local defendants") have joined in said motion. Below I

---

1. The federal defendants in this action are Raymond Donovan in his capacity as Secretary of Labor, Carolyn Golding in her capacity as Regional Administrator of the Department of Labor's Comprehensive Employment and Training Act program, and John Otero both individually and in his capacity as Grants Officer for the Department of Labor.

will set forth the factual background against which the present motion must be considered.

The plaintiffs in this action are the Consortium of Community Based Organizations (hereinafter "Consortium") and the Chico Housing Improvement Program (hereinafter "CHIP"). Plaintiff Consortium is made up of various community based organizations which have either applied for and been denied program funding pursuant to the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 801, *et seq.*, or have allegedly been discouraged from applying for said funding by virtue of certain conduct of the various defendants.[2] *See* Plaintiffs' Complaint, para. 11. Plaintiff CHIP is a local non-profit corporation that purports to provide numerous housing related services to low income individuals. The federal defendants are alleged to play various roles in the administering of the CETA program at the federal level.[3] Defendant Butte County is a unit of local government which has been designated by the Secretary of Labor as the "prime sponsor"[4] in charge of the distribution of awarded CETA funds in Butte County. Defendant Rackerby is the Director of the Butte County Employment and Training Administration and as such is the administrator of the CETA program, at the prime sponsor level, in Butte County.

In essence, plaintiffs allege that the local defendants have engaged in a policy of denying plaintiffs certain benefits relative to program funding to which they are entitled pursuant to CETA. In particular, plaintiffs allege that the local defendants have violated both the statutory provisions of CETA and the United States Constitution by refusing to provide for their representation on the local CETA planning council and by developing a policy which discriminates against them in favor of government agencies seeking CETA funding. The plaintiffs also allege that the federal defendants were aware of said violations by the local defendants and failed to take action to ensure CETA funds were administered in accordance with law. This inaction by the federal defendants is alleged to violate the terms of CETA and plaintiffs' constitutional right to due process. Finally, plaintiffs allege that by virtue of their action and inaction the federal defendants have acted in concert with the local defendants and their policy of denying plaintiffs their statutory and constitutional rights. Plaintiffs allege that the court has jurisdiction to entertain the claims set forth above pursuant to 28 U.S.C. §§ 1331, 1343(3) & (4), 1361, 2201, and 2202.

The federal defendants, in their motion to dismiss or for summary judgment, argue

---

2. The identity of the plaintiffs suggests a question, not raised by the parties in their briefs, relative to their standing to bring this action. The Ninth Circuit has previously held that parties who are merely competitors for CETA funding lack standing to challenge the funding decisions made by the Department of Labor. *Hood River County v. United States Department of Labor*, 532 F.2d 1236, 1239 (9th Cir. 1976). Moreover, to the extent that plaintiffs' organization (Consortium of Community Based Organizations) is made up of groups who were allegedly discouraged from seeking funds due to the alleged activities of defendants. There is also a significant question as to their standing to bring this action. *See Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This order is, of course, with no prejudice as to future motions in this litigation regarding the question of plaintiffs' standing to sue.

3. The United States Department of Labor administers the overall funding process established by CETA. Defendant Donovan is the current Secretary of Labor and, as such, is allegedly responsible for the overall administration of the program. Defendant Golding is the Department of Labor's western regional administrator for CETA programs. Defendant Otero is employed by the Department of Labor as a CETA grants officer and is allegedly responsible for the monitoring of the local CETA programs to ensure compliance with the applicable statutory and regulatory requirements.

4. The definition and required qualifications of a "prime sponsor" in the CETA context are set forth at 29 U.S.C. § 811. In essence, where prime sponsors have been designated in a local area CETA funds are channeled from the Department of Labor to the prime sponsor and then distributed. In order to receive financial assistance pursuant to CETA the prime sponsor must submit to the Secretary a comprehensive employment and training plan consisting of a master plan and an annual plan. *See* generally 29 U.S.C. § 813(a).

that this court lacks jurisdiction to hear plaintiffs' claims. They assert that CETA itself provides the exclusive means for judicial review of the present claims, requiring exhaustion of administrative remedies prior to seeking review directly in the United States Court of Appeals. *See* 29 U.S.C. §§ 816, 817. Given this adequate judicial review provision of CETA, the federal defendants argue that jurisdiction in this court pursuant to 28 U.S.C. § 1331 does not exist in this case. Recognizing, however, that this court would have jurisdiction to hear substantial constitutional claims, and pendent statutory claims, pursuant to Section 1331 the federal defendants argue that the plaintiffs have failed to allege any such substantial constitutional claims. It is also asserted by these defendants that 28 U.S.C. § 1343 does not provide for jurisdiction over federal agents acting under color of federal law and, in any event, CETA is not an Act of Congress creating "equal rights" or "civil rights" and thus jurisdiction over these claims does not exist under Section 1343 pursuant to the Supreme Court's decision in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Finally, the federal defendants assert that neither 28 U.S.C. § 1361 (mandamus jurisdiction) nor 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act) provide an independent basis for the court's jurisdiction over the claims in this action. The local defendants join in the federal defendants' motion and, in addition, suggest that this case may be moot.

Below I will address each of the issues raised by the defendants' motions *seriatum*. In this opinion I decide that the case is not moot since the defendants have not demonstrated that the allegedly illegal behavior could not reasonably be expected to recur. Nonetheless, I also find that this action must be dismissed against the federal defendants since CETA itself provides the exclusive remedy for its violation when the claim is asserted against the United States or its agencies and that plaintiffs' claims do not rise to the dignity of a constitutional violation. Finally, however, I find that plaintiffs' allege a violation of a federal law, CETA, which is sufficient to state a claim under 42 U.S.C. § 1983 against the local defendants, and that under the most recent teachings of the Supreme Court, this court has jurisdiction to consider the claims under 28 U.S.C. § 1331. While this result may appear anomalous, the asymmetry results from the complex inter-relationship of the law concerning substantive claims and the limited jurisdiction of federal courts.

## I

## MOOTNESS

The local defendants suggest that, at least to the extent plaintiffs seek a proper application of CETA's requirements, this action is moot. In support of this position the local defendants assert that the present administration has defunded Title VI, and thus the CETA program, and that the local defendants are "winding down" the last of the CETA funded programs.

As noted, the matter is before the court on the defendants' motion to dismiss or in the alternative for summary judgment. To the extent defendants would have the court consider matters outside the pleadings the motion must be resolved under summary judgment standards. *See Solinger v. A & M Records, Inc.*, 586 F.2d 1304, 1307–08 (9th Cir. 1978), *cert. denied* 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979); *Carlsberg v. Gatzek*, 442 F.Supp. 813 (C.D.Cal.1977). On a motion for summary judgment it is well settled that the moving party has the burden of demonstrating that no material issue of fact exists and that the party is entitled to judgment as a matter of law. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665 (9th Cir. 1980); *British Airways Board v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Because the burden is on the moving party, the evidence before the court is to be construed in favor of the opposing party and all favorable inferences are to be drawn in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674

(9th Cir. 1976), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). Finally, any doubt as to the existence of a material issue of fact is to be resolved against the movant. *Adickes v. S. H. Kress & Co., supra; Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.,* 563 F.2d 391 (9th Cir. 1977).

In this instance the exacting standards for summary judgment are supplemented by similarly stringent standards relative to the disposition of the underlying substantive issue. Claims of mootness implicate the court's jurisdiction since the federal courts are without power to decide questions which cannot affect the rights of litigants in the cases before them. *See St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559–60, 56 L.Ed.2d 30 (1978); *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Nonetheless, the test for mootness in cases in which the defendants have, for some reason, ceased the allegedly illegal conduct is a stringent one.[5] *United States v. Concentrated Phosphate Export Association,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). Although subsequent events may reduce the practical importance of the case for the parties, it is not rendered moot unless the defendant is able to demonstrate that the subsequent events make it absolutely clear that the allegedly illegal behavior could not reasonably be expected to recur. The defendant's burden in this regard is a heavy one. *Vitek v. Jones,* 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63

L.Ed.2d 552 (1980); *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *United States v. Concentrated Phosphate Export Association, supra,* 393 U.S. at 203, 89 S.Ct. at 364; *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *TRW, Inc. v. F.T.C.,* 647 F.2d 942, 953 (9th Cir. 1981). In the present action the defendants have failed to meet their burden on the issue of mootness.

The only evidence before the court relevant to the future of the CETA program on the national scale, and thus material to the issue of mootness, is a copy of a telegraphic message from the United States Department of Labor to its Regional Administrators dated February 26, 1981.[6] *See* federal defendants' motion to dismiss or for summary judgment, Exhibit 1. In pertinent part that message reads as follows:

The President will submit a revised fiscal year 1981 budget to Congress which will provide for the following:

—a reduction in available Titles II–D and VI funds for the balance of fiscal year 1981 and the phaseout of Titles II–D and VI programs by no later than September 30, 1981. Pursuant to the above, a hiring freeze for all Titles II–D and VI positions is implemented effective March 2, 1981.

The record before the court reflects nothing further relative to the future funding and operation of the CETA program. The message imposes a hiring freeze. While it is true that the freeze is based on anticipated budget proposals, the record does not provide any further information from which the court could determine whether the CETA program will in fact operate in the future.

**5.** The stringency of the test applied in such cases derives from the perception that were the mere voluntary cessation of alleged illegal conduct to render a case moot, the courts would be compelled to leave the defendant free to return to his "old ways." For this reason the courts have refused to grant defendants such a powerful weapon against the enforcement of public laws. *See United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *United States v. Concentrated Phosphate Export Association,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968);

*TRW, Inc. v. F.T.C.,* 647 F.2d 942, 953 (9th Cir. 1981). This underlying rationale is equally applicable under the facts of the present case.

**6.** The telegram also included instructions relative to prime sponsors and their current operation in light of "anticipated changes in fiscal year 1981." Moreover, prime sponsors were advised "that additional instructions and allocations based on the anticipated changes in budget authority will be issued shortly." The message was signed by Robert T. Jones, Administrator, Office of Management Assistance.

From the evidence presented by defendants, the court may only conclude that in March of 1981 a hiring freeze was placed upon all programs funded pursuant to Title VI, presumably including all CETA programs. There is no evidence before the court that CETA itself has been repealed nor evidence from which the court could draw the inference that the allegedly illegal action could not reasonably be expected to recur. It is just as reasonable to infer that CETA would be funded again at some time in the future. It is clear that "a case does not become moot as to the specific petitioner in a case, even if the complained-of conduct has ceased, 'if there is a possibility of a recurrence which would be within the terms of a proper decree.'" *Lyons v. City of Los Angeles*, 615 F.2d 1243, 1248 (9th Cir.), *cert. denied*, 449 U.S. 934, 101 S.Ct. 333, 66 L.Ed.2d 158 (1980), *quoting from* Bator, Mishkin, Shapiro and Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 110 (1973). Under the standards set forth above, and as the record in this case now stands,[7] plaintiffs' claim is not moot and should be heard by this court.

## II

## JURISDICTION OVER THE FEDERAL DEFENDANTS

All defendants move to dismiss the action against them on grounds that none of the jurisdictional provisions pled by plaintiffs grant this court jurisdiction to hear the claim. Because the federal defendants' motion in this regard presents different issues than those raised by the same motion of the local defendants they will be considered separately. The court will first consider its jurisdiction over the claims against the former.

Plaintiffs have alleged that this court has jurisdiction over their claims of a violation of the provisions of CETA pursuant to 28 U.S.C. § 1331.[8] As an initial matter plaintiffs assert that jurisdiction pursuant to Section 1331 exists in the district court because CETA itself, specifically 29 U.S.C. § 816(*1*), creates a private right of action for those who desire to bring suit in the district court alleging violations of the statute. In this regard plaintiffs argue that it is unnecessary to consider whether CETA creates an implied right of action because 29 U.S.C. § 816(*1*) explicitly authorizes actions in federal district court alleging CETA violations. Plaintiffs' arguments are not persuasive.

■ The statutory provision upon which plaintiffs base their argument in support of the private right of action theory, 29 U.S.C. § 816(*1*), provides as follows:

The existence of remedies under this section shall not preclude any person, who alleges that an action of a prime sponsor or of any other recipient violates any of the provisions of the chapter or the regulations promulgated under the chapter, from instituting a civil action or pursuing any other remedies authorized under Federal, State, or local law.

Plaintiffs assert that this provision not only preserves already existing causes of action and remedies but also authorizes the instituting of a civil action pursuant to CETA itself. In *CETA Workers Organizing Committee v. City of New York*, 617 F.2d 926 (2d Cir. 1980) the Second Circuit Court of Appeals considered the same statutory argument made by similarly situated plaintiffs and in a well-reasoned opinion rejected that position after considering both the statute as a whole and the legislative history. After undertaking the same analysis as the *CETA Workers* court, this court is per-

---

**7.** The court's ruling is without prejudice to defendants raising the issue of mootness by subsequent motion presenting the court with further evidentiary material in that regard. Due to the resolution reached above, the court need not address plaintiffs' contention that *Galvez v. Howerton*, 503 F.Supp. 35, 38 (C.D.Cal.1980), is in some way relevant to the question of mootness.

**8.** 28 U.S.C. § 1331 provides as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

suaded that Section 816(*l*) of Title 29 does not *itself* create a private right of action.[9]

■ As a general rule of statutory interpretation, the courts may assume that Congress meant what it has said. In this regard, when a statute is clear and unambiguous and an interpretation in accordance with its terms would not lead to an absurd or impracticable result, the words employed by Congress may be taken as the final expression of its intent. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184, n. 29, 98 S.Ct. 2279, 2296–97, n. 29, 57 L.Ed.2d 117 (1978); *Church of Scientology v. United States Department of Justice*, 612 F.2d 417, 421 (9th Cir. 1979). Nonetheless, recent Supreme Court and Ninth Circuit cases make it clear that the "plain meaning" rule is no longer absolute but rather a flexible principle for ascertaining Congressional intent. The Supreme Court has recently reflected this principle as follows:

> [A]scertainment of the meaning apparent on the face of a single statute need not end the inquiry. [citations omitted] This is because the plain meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' *Boston Sand Co. v. United States*, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928) (Holmes J.). The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect. [citations omitted]

*Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981). The Ninth Circuit has described the role of legislative history in statutory construction after *Watt v. Alaska* in the following manner:

> When the meaning of statutory language is unclear, one must look to the legislative history. When the statutory language is clear, and there is no reason to believe that it conflicts with the congressional purpose, then legislative history need not be delved into, unless it is brought to the court's attention that there is within the

legislative history something so probative of the intent of Congress as to require a reevaluation of the statutory language. *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, at 868, 871–872 (9th Cir. 1981).

Applying these rules of statutory interpretation to the present case it is clear that consideration of the legislative history is appropriate. Contrary to plaintiffs' arguments, Section 816(*l*) does not clearly and unambiguously create a private right of action. Read in isolation it is possible that the language "this section shall not preclude any person, who alleges that an action ... violates any of the provisions of the chapter ... from instituting a civil action or pursuing any other remedies authorized under Federal, State or local law" could be interpreted as authorizing a civil action based solely upon the statute. Nonetheless, the language is worded in the negative and would be a somewhat indirect and backhanded manner of creating the private right of action asserted by plaintiffs. The tenor of the language suggests that Section 816(*l*) is a savings clause which simply preserves for the plaintiffs any cause of action otherwise available to them rather than creating a new right of action based upon CETA itself. Thus, the statute itself does not plainly answer the pertinent issue and reference to the legislative history is appropriate. *See Busic v. United States*, 446 U.S. 398, 407, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *See also Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 9–11, 96 S.Ct. 1938, 1942–43, 48 L.Ed.2d 434 (1976).

Unfortunately, reference to the applicable legislative history in this instance leads to conflicting and thus nondispositive results. It seems that the language of Section 816(*l*) appeared only in the Senate version of CETA and that the House acceded to the Senate bill insofar as it provided "that the existence of remedies does not preclude a person from instituting a civil action or pursuing other remedies authorized under Federal, State, or local law." 1978

---

9. As will be seen, however, Section 816(*l*) does have a significant and different application in terms of the claims against the local defendants. *See* Part III, infra.

U.S.Code Cong. & Admin.News, 4480, 4590. The "Highlights of the Committee Bill" portion of the Senate's legislative history, under the heading "Grievance Procedure," provides that "The amendment [to § 816(*1*)] provides that remedies provided *do not preclude remedies which are otherwise available under Federal, State, or local law.*" (emphasis added) 1978 U.S.Code Cong. & Admin.News 4480, 4496. This language indicates that the provision should simply be read as a savings clause which preserves already existing causes of action but does not create any new right of action. However, the "Section-by-Section Summary Analysis" of the bill, in summarizing the complaints and sanctions provisions states that "Subsection (e) provides that nothing in this act precludes a person who alleges a violation of the act or regulations from instituting a civil action." 1978 U.S.Code Cong. & Admin.News 4480, 4561.[10] The latter excerpt of the legislative history, it could be argued, may support plaintiffs' theory of the creation of a private right of action. Thus, conflicting inferences can reasonably be drawn for the applicable legislative history and it is not determinative of the issue and I must turn to other canons of construction.

■ It is fundamental that a court is not to read each section of a statute in isolation but, rather, should consider each section in connection with the entire statute and the objects and policies of the law as indicated by the various provisions. *Stafford v. Briggs,* 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980); *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962); *Brown v. Duchesne,* 19 How. 183, 194, 15 L.Ed. 595 (1857). An examination of the remainder of Section 816 and the other provisions of CETA reveals a comprehensive system of administrative remedies through which to pursue claims of statutory violations as well as a specific provision regarding judicial review

of final agency action in response to such claims. In this regard 28 U.S.C. § 816 establishes a bi-level administrative grievance procedure. The statute requires that each prime sponsor establish and maintain a grievance procedure for the handling of program complaints from any participants, subgrantees, contractors, or any other interested persons. *See* 29 U.S.C. § 816(a). The statute also requires that the Secretary of Labor must conduct an investigation whenever he receives "a complaint from any interested person or organization (which has exhausted the prime sponsor's grievance system . . . or which has exhausted or failed to achieve resolution of the grievance under the recipient's grievance system . . ." 29 U.S.C. § 816(b). The Secretary must issue a final determination on the complaint within 120 days after complaint is received. *Id.* Where the Secretary finds that the prime sponsor or recipient has failed to carry out the purposes and provisions of CETA or the regulations promulgated pursuant thereto he has the authority to revoke any part of the prime sponsor's plan, terminate financial assistance pursuant to the act, or withhold funds otherwise payable in order to recover the amount spent in violation of the act. *See* 29 U.S.C. §§ 816(c)(2)(G), 816(d)(1) and 816(g).

In addition to the comprehensive administrative grievance procedure, CETA also provides for judicial review, in the appropriate United States Court of Appeals, of any final action of the Secretary in this regard. 29 U.S.C. § 817. That section of CETA provides that:

(a) If any prime sponsor is dissatisfied with the Secretary's final action with respect to the disapproval of its comprehensive employment and training plan under section 814 of this title, or if any recipient is dissatisfied with the Secretary's final action with respect to a sanction under section 816 of this title, *or if any interested person is dissatisfied with or aggrieved*

---

**10.** The section-by-section Summary Analysis within the legislative history also addresses the judicial review provision in CETA, 28 U.S.C. § 817, and with regard to that section states, "This section provides that a recipient's right of review is in the courts of appeal if the recipient is dissatisfied with the Secretary's action in finally disapproving a plan, withholding funds, or taking an action with respect to a sanction." This provision is discussed more fully below.

*by any final action of the Secretary authorized under section 816 of this title,* such prime sponsor, recipient, or person may, within 60 days after notice of such action, file with the United States court of appeals for the circuit in which the prime sponsor, recipient, or person resides or transacts business a petition for review of such action. (emphasis added)

In general, where Congress has specifically created a procedure for the judicial review of agency actions allegedly in violation of the statute in question that procedure constitutes the exclusive means of review unless under the unique circumstances the procedure provided by Congress fails to supply an adequate remedy. *See Association of National Advertisers v. F.T.C.,* 617 F.2d 611, 621 (D.C.Cir.1979); *Independent Cosmetic Mfgs. & Distributors, Inc. v. United States Dept. of Health, Education & Welfare,* 574 F.2d 553, 554 (D.C.Cir.1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978).[11]

Consideration of §§ 106 and 107 of Title 29 reveal a comprehensive, elaborate, and mandatory administrative grievance procedure which leads specifically to judicial review of any action arising therefrom directly in the appropriate Court of Appeals. Particularly in light of the indirect and unclear language of Section 816(*1*) it seems inappropriate to interpret that provision, which states that certain actions are not "precluded," as affirmatively authorizing a new private right of action pursuant to CETA. As the Second Circuit held in *CETA Workers, supra,* to do so would render the remaining portions of §§ 816, 817 substantially less vital than their language and prominence in the statute suggest.

Plaintiffs argue that the analysis undertaken by the Second Circuit in *CETA Workers* was flawed and that this court should find a private right of action created by Section 816(*1*) on the basis of the reasoning set forth in *Hark v. Dragon,* 477 F.Supp. 308 (D.Vt.1979), *aff'd* 611 F.2d 11 (2d Cir.

1979). *Hark* was an action alleging various violations of CETA and the United States Constitution arising from the state and federal defendants' implementation of a one year maximum employment term under the CETA program. The federal defendants moved to dismiss on the grounds of plaintiffs' failure to exhaust administrative remedies provided pursuant to 29 U.S.C. § 816. The district court denied the motion finding, with little analysis, that Section 816(*1*) authorized the lawsuit in district court without the exhaustion of the administrative remedies set forth in CETA and that jurisdiction was accorded by 28 U.S.C. § 1331(a). The court then entered summary judgment in favor of the defendants. It is clear, however, that in affirming the district court the Second Circuit did not rule on the issue of a private right of action but, rather, affirmed the district court's finding of jurisdiction on the basis of plaintiffs' constitutional claims, providing jurisdiction under 28 U.S.C. § 1331, and the futility of exhaustion under the facts of that case. In this regard the Second Circuit observed,

> Under the circumstances, we need not consider whether Judge Coffrin was correct in holding that 29 U.S.C. § 816(*1*) 'authorizes plaintiffs to sue ... without exhaustion of the administrative procedures set forth in the Act.' Nor, in view of our disposition of the case, need we consider whether there is a sufficient source for the statutory cause of action in 42 U.S.C. § 1983, *see Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), or elsewhere.

*Hark v. Dragon,* 611 F.2d 11, 14, n.4 (2d Cir. 1979); *see also CETA Workers Organizing Committee v. City of New York, supra* at 934, n.6 (recognizing that the panel's decision in *Hark* was on a limited number of issues leaving open the question of the private right action allegedly created by § 816(*1*)). Thus, the circuit court from which *Hark* arose has rejected the district

---

11. As will be seen, however, where plaintiffs allege a cause of action against non-federal defendants which is distinct and independent of

the agency's alleged misconduct, exhaustion is not required. *See* III, *infra.*

court's opinion on the private right of action issue.[12] Likewise, this court is unpersuaded by its rationale.

Plaintiffs' final argument in support of bypassing the administrative remedies and judicial review provided by the Act is that in this case exhaustion would have been futile and could not have provided them with an adequate remedy. In support of this argument plaintiffs assert that it would have been futile to exhaust the administrative remedies provided at the prime sponsor level since it was Butte County's long-standing policy of excluding CBO's from participating in the CETA program which gave rise to the present action. Moreover, plaintiffs allege, the federal defendants' failure to enforce CETA requirements in a meaningful manner against the local defendants made pursuit of the administrative process at the federal level futile as well. Finally, plaintiffs argue that they did in fact exhaust the administrative process by filing a complaint raising the issues presented by this lawsuit directly with the Department of Labor and that said complaint was rejected. In closing, plaintiffs suggest that time was of the essence since the funding date for a number of CETA projects was April 1, 1981. Thus, for all of the reasons set forth above plaintiffs contend that the court should conclude that they either exhausted, or were excused from exhausting, the available administrative and judicial procedures established by CETA.

In effect plaintiffs admit that they have failed to exhaust the administrative procedures provided by CETA. Rather, they argue that they should not be required to do so under the facts of this case. Plaintiffs' arguments in this regard are unpersuasive. As noted above, the administrative remedy procedure provided for in CETA involves both a local and a federal level of administrative review. The final decision rendered by the Secretary is subject to direct judicial review in the appropriate court of appeals. 29 U.S.C. § 817. At the prime sponsor (local) level a hearing is to be held within 30 days of the filing of a grievance with a decision to be issued within 60 days of said filing. In addition, the Secretary of Labor has promulgated regulations requiring that the local hearing be held before an impartial hearing officer and that the complaining party be granted the right to representation, the right to present evidence, a full opportunity to cross-examine and that a written decision be issued. 20 C.F.R. § 676.83(c). Any party aggrieved by the hearing decision at the local level may instigate an investigation by a CETA Grant Officer at the federal level. 20 C.F.R. § 676.86(c).

At the federal administrative review level the Grant Officer, after conducting his investigation, issues a final determination or dismisses the complaint. 20 C.F.R. § 676.88(a)–(e). Any party affected by the decision of the Grant Officer may obtain review of that decision before an independent Administrative Law Judge. 20 C.F.R. § 676.88(f). The decision of the Administrative Law Judge becomes the final decision of the Secretary of Labor unless the Secretary modifies or vacates that decision within thirty (30) days after it is rendered. At the end of that period the decision becomes the final agency action on the matter within the meaning of the Administrative Procedure Act. 20 C.F.R. §§ 676.91(f); 676.92. As noted above, this final agency action is then subject to judicial review in the appropriate Court of Appeals. This comprehensive and many tiered system of administrative and judicial review is appar-

12. As noted above, in *CETA Workers Organizing Committee v. City of New York*, 617 F.2d 926 (2d Cir. 1980), the Second Circuit rejected the notion that Section 816(*I*) creates a private right of action. Moreover, the Second Circuit opinion in *Hark* affirming the district court order relied upon by plaintiffs here, is quite frank in calling into question the soundness of the district court's analysis. In this regard the circuit court observed, "... we would be less than candid not to mention that the district judge's decision on merits seems so clearly correct that we should say so at the earliest appropriate opportunity, when the public interest in resolution of the basic question is so great." *Hark v. Dragon*, 611 F.2d 11, 14 (2d Cir. 1979).

ently designed to allow the agency to demonstrate its expertise by balancing the various interests served by CETA in arriving at a result with respect to the interpretation of the Act.

In light of the Congress' expressly providing for such an elaborate system of review and remedies the court should not be anxious to allow a circumvention of that process absent extraordinary circumstances. *See Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 419–23, 85 S.Ct. 551, 556–59, 13 L.Ed.2d 386 (1965). (But see n.11, supra) In the present case such extraordinary circumstances simply do not exist. First, it is clear that plaintiffs have never attempted to file a complaint at the local administrative review stage. *See* affidavit of Solomon Robinson. Plaintiffs claim that they filed an administrative complaint directly with the federal Grant Officer in December 1980, bypassing the local level complaint procedure, and that said complaint was rejected. Moreover, based upon informal discussions with local defendant Rackerby and with the then federal representative of Butte County, plaintiffs assert that they were justified in concluding, after the rejection of their complaint by the federal Grant Officer (defendant Otero), that pursuit of administrative remedies provided by CETA would be futile. The record reveals, however, that plaintiffs' complaint was rejected by the federal Grant Officer due to their failure to attempt to exhaust the local level administrative procedures. *See* plaintiffs' Complaint, Exhibit P. The Grant Officer is required to accept such complaints despite the failure to exhaust lower level remedies only where it is determined that (1) the local grievance procedure did not respond to the complaint within the required sixty days or, (2) the local level administrative review procedures are not in compliance with the requirements of CETA, or (3) where an emergency exists. 20 C.F.R. § 676.85. In the present case the federal grant officer in question, defendant Otero, found that none of the exceptions applied and that plaintiffs should then be required to exhaust the available procedures. Thus, there is no evidence from which the court could draw the inference that exhaustion of the available remedies would have been futile. Plaintiffs simply never attempted to exhaust said remedies. To allow them to seek review in this court without exhausting such available remedies would allow the bypassing of intricate procedures provided by Congress any time a complainant "felt" that he could not obtain a favorable ruling from the administrative remedy.

Finally, with regard to their assertion that the administrative remedy was too time consuming given the emergency of the situation, plaintiffs' own actions indicate that such was not the case. Plaintiffs claim that the crucial date was April 1, 1981, when certain CETA programs would receive funding. Even though plaintiffs filed this lawsuit in February of 1981, presumably to obtain the requested relief prior to the crucial date noted above, they nonetheless failed to request preliminary relief of any kind prior to that date. Moreover, any argument that could have once been made relative to the emergency nature of plaintiffs' claim has been rendered moot by the freeze on CETA funds placed in effect on March 2, 1981.[13] Therefore, I find that plaintiffs have neither exhausted nor were excused from exhausting the administrative remedies made available by CETA.[14] Moreover, based upon the analysis set forth

---

**13.** See discussion at p. 525, infra. See also n.6.

**14.** This conclusion makes it unnecessary for the court to address the question in this context of whether and to what extent concurrent jurisdiction in the district court is precluded when Congress has specified a procedure for judicial review of administrative action which places jurisdiction in the Court of Appeals. *See Association of National Advertisers v. FTC,*

617 F.2d 611, 621 (D.C.Cir.1979); *Independent Cosmetic Manufacturers and Distributors, Inc. v. U.S. Dept. of HEW*, 574 F.2d 553, 554 (D.C. Cir.1978), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *See also Macauley v. Waterman Steamship Corp.*, 327 U.S. 540, 543–45, 66 S.Ct. 712, 713–15, 90 L.Ed. 839 (1946); *UMC Industries, Inc. v. Seaborg*, 439 F.2d 953, 955 (9th Cir. 1971).

above, and in concurrence with the Second Circuit, I conclude that 29 U.S.C. § 816(*l*) does not expressly create a private right of action for those alleging violations of the provisions of CETA.[15] *See generally CETA Workers Organizing Committee v. City of New York, supra* at 930–934.

The final grounds asserted by plaintiffs relative to this court's jurisdiction over their claims against the federal defendants pursuant to 28 U.S.C. § 1331 is that the claims are of a constitutional dimension and thus the district court has jurisdiction over them despite the judicial review procedure established by CETA. *See Hark v. Dragon,* 477 F.Supp. 308, 312 (D.Vt.1979), *aff'd* 611 F.2d 11, 13–14 (2d Cir. 1979). In this regard plaintiffs allege only that the federal defendants violated their "due process rights" by imposing an ineffective administrative review process upon them and denied them their "Fourteenth Amendment rights" (sic) by acting in concert with the local defendants in formulating and implementing the local level plan which they allege denied them the special consideration which is due them under CETA.[16] *See* Plaintiffs' Complaint, Fourth Cause of Action, p. 14. In response to these constitutional allegations the federal defendants move to dismiss both on the grounds that the court lacks jurisdiction over the claims and that they fail to state a claim upon which relief may be granted.

■■■■ The issue of whether the court has subject matter jurisdiction is distinct from the issue of whether plaintiffs have stated a claim upon which relief may be granted. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Where a substantial federal question is presented by the complaint in question, then the court has jurisdiction over the action and may exercise pendent jurisdiction over the remaining claims. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Accordingly, a complaint alleging constitutional violations should be dismissed for lack of subject matter jurisdiction only where said constitutional allegations are (1) wholly unsubstantial or obviously frivolous (2) foreclosed by prior cases which have settled the question or (3) so patently without merit so as to require no meaningful consideration. *Hagans v. Lavine, supra* at 536–37, 94 S.Ct. at 1378–79; *Duke Power Co. v. Carolina Env. Study Group Inc.,* 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2628–29, 57 L.Ed.2d 595 (1978). Thus, a complaint may allege violations of constitutional rights sufficient for the court to assume jurisdiction and yet at the same time fail to state a cognizable claim. In such cases the court should assume jurisdiction and dismiss the case on the merits. *See Chesapeake Bay Village Inc. v. Costle,* 502 F.Supp. 213, 221 (D.Md. 1980); *Williamson v. Tucker,* 632 F.2d 579, 590–91 (5th Cir. 1980). Nonetheless, in the instant action plaintiffs' constitutional claims do in fact border upon being properly characterized as wholly unsubstantial, obviously frivolous, and so patently without

**15.** The plaintiffs have not raised various other arguments. I note them only for the purpose of suggesting that plaintiffs' reticence was quite proper. Thus it does not appear that CETA created an implied private right of action. *See Transamerica Mortgage Advisors Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); *See also CETA Workers Organizing Committee v. City of New York,* 617 F.2d 926, 931–34 (2d Cir. 1980). Nor is there jurisdiction predicated upon 28 U.S.C. § 1331 to the extent the Administrative Procedure Act, 5 U.S.C. § 701, et seq., authorizes review of final agency action. In the instant action it is clear that whatever action the feder-

al defendants may have taken the federal agency was clearly not given the opportunity to state "its last word on the matter" and thus there was no final agency action here. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 586–88, 100 S.Ct. 1889, 1894–95, 64 L.Ed.2d 525, 534 (1980).

**16.** Because there were some vague references to claims of "politically motivated" discrimination found within plaintiffs' pleadings the court inquired of plaintiffs' counsel whether they desired to seek to amend their complaint to allege a claim of political discrimination in violation of either the equal protection clause or the first amendment against the federal defendants. At hearing counsel declined said invitation.

merit so as to require no meaningful consideration. *See Doe v. Klein*, 599 F.2d 338, 341 (9th Cir. 1979); *See Wiley v. NCAA*, 612 F.2d 473, 477 (10th Cir. 1979), *cert. denied* 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798 (1980). In this regard the court notes that a mere naked assertion of a denial of equal protection or due process does not automatically confer jurisdiction on the district court. *See Attwell v. Nichols*, 608 F.2d 228, 231 (5th Cir. 1979). In the same manner not every alleged violation of statutory law rises to the level of a claim for denial of a constitutionally protected interest. *See Rogers v. Okin*, 634 F.2d 650, 663 (1st Cir. 1980). In the present action plaintiffs have alleged little more than that the federal defendants have failed to enforce the requirements of CETA. While it is doubtful that such claims rise to a constitutional level the court need not rule on that issue given the disposition reached on the federal defendants' motion to dismiss the constitutional claims for failure to state a claim upon which relief may be granted.

█ As an initial matter it must be noted, contrary to plaintiffs' allegations, that the fourteenth amendment applies only to state action and therefore cannot be the basis for a claim against the federal defendants. Nonetheless, the fifth amendment may serve as the basis for an allegation of both equal protection and due process violations against federal defendants in that certain discrimination may be so unjustified as to be violative of due process. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

█ To the extent plaintiffs' complaint may be read as stating an equal protection claim against the federal defendants it fails to state a claim upon which relief may be granted. The only classification vaguely alleged by plaintiffs to be improper is that of some sort of "political" distinction made between plaintiffs and those other receiving CETA grants. In this regard plaintiffs specifically declined to make said allegations against the federal defendants. In every other possible respect CETA admittedly accords community based organizations special considerations in obtaining grant money. 29 U.S.C. § 825(*l*); 20 C.F.R. §§ 678.3, 680.108. Thus, there is certainly no valid claim that the statute itself unlawfully discriminates against plaintiffs. Accordingly, plaintiffs have in fact alleged a claim for violation of a federal statute and not one based upon equal protection.

█ Plaintiffs' other constitutional claim may be read as alleging that the federal defendants' conduct, both in failing to act in response to the local defendants' decisions and in subjecting plaintiffs to the administrative procedure established by CETA have, in some fashion, violated their due process rights guaranteed by the fifth amendment. The question of what process is due is directly related to the actual interest at stake. As the Supreme Court has observed "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), *quoting from Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). *See also Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The nature of the private interest at stake here has been defined in various contexts. The courts have uniformly held that the administrative review provisions of CETA do not give rise to a constitutionally protected "property" interest in continued employment.[17] *Hay-*

---

17. In this regard it should be noted that the Ninth Circuit has previously determined that parties who are merely competitors for CETA grant funds lack standing to challenge the awarding of funds to organizations other than themselves. This is because the CETA program is aimed at aiding a select group of unemployed persons, not the organizations which receive the funds. *Hood River County v. United States Department of Labor*, 532 F.2d 1236, 1238 (9th Cir. 1976). This holding implicates that there are serious questions regarding

*ward v. Henderson*, 623 F.2d 596, 597 (9th Cir. 1980); *Hark v. Dragon, supra* 611 F.2d at 14–15; *Gooley v. Conway*, 590 F.2d 744, 746 (8th Cir. 1979); *Maloney v. Sheehan*, 453 F.Supp. 1131, 1141 (D.Conn.1978); *See also Orange County, New York v. U.S. Department of Labor*, 636 F.2d 889, 890 (2d Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981); *but see CETA Workers Organizing Committee v. City of New York, supra* at 933, n.4 (suggesting that a CETA job "falls somewhere between a statutory entitlement to receive welfare payments and a 'right' to receive funding to do sculpture from the National Endowment for the Arts" only as to those unemployed persons who are in fact selected to participate in a program). A property interest is created only where the procedural requirements are intended to operate as a significant substantive restriction upon the allowable basis for the agency's actions. *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980). As the above-cited cases make clear, the procedures provided for in CETA do not create such a right. Certainly those who seek grant funds, such as the plaintiffs in this case, can be found in no more a favored position than the selected economically disadvantaged, unemployed or underemployed persons whom the Act was designed to aid. *See* 29 U.S.C. § 801.

The conclusion reached above that the plaintiffs have no constitutionally protected interest in CETA funding is also dispositive as to their claim, if one may be gleaned from their complaint, that the federal defendants have denied them their right to procedural due process. To come within the protection of the due process clause plaintiffs must establish that their liberty or property interests were denied by the federal defendants without an opportunity for them to challenge said invasion. *See Board*

of *Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Knoetze v. United States, Department of State*, 634 F.2d 207 (5th Cir. 1981); *Bauza v. Morales Carrion*, 578 F.2d 447 (1st Cir. 1978); *Pan Am World Airways Inc. v. United States District Court*, 523 F.2d 1073 (9th Cir. 1975); *Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.*, 506 F.2d 467 (9th Cir. 1974). Moreover, even if the court were to conclude that plaintiffs had a constitutionally protected property interest in CETA funding there is no indication in fact or in law [18] that the administrative and judicial review provisions of CETA would fail to comport with constitutional due process standards under the facts of this case. For the reasons set forth above, the court concludes that plaintiffs' constitutional claims against the federal defendants must be dismissed for failure to state a claim upon which relief may be granted.

Plaintiffs also allege that 28 U.S.C. § 1343 provides this court with jurisdiction over their claims against the federal defendants. This jurisdictional provision is the historic partner of 42 U.S.C. § 1983 and provides in pertinent part for jurisdiction in the district court of any civil action authorized by law to redress the deprivation, under color of any state law any right, privilege or immunity secured by the United States Constitution or by any Act of Congress providing for the equal or civil rights of citizens or other persons within the jurisdiction of the United States. *See* 28 U.S.C. § 1343(3) & (4). In essence, 42 U.S.C. § 1983 and 28 U.S.C. § 1343 provide federal remedies and federal jurisdiction in suits against state officers acting under color of state law where a plaintiff alleges violations of rights, privileges and immunities secured under the Constitution and

---

plaintiffs' standing to bring this action. *See* n.2, infra. More to the point here, however, is that since CETA does not give rise to a constitutionally protected property interest in continued employment for those whom the Act was intended to benefit, *a fortiori* it cannot create a property right in continued funding on behalf of those whom the Act is not specifically intended to benefit.

18. Plaintiffs have not cited nor has the court discovered any cases which even suggest that the administrative procedure accorded plaintiffs under CETA is deficient as a matter of due process.

laws of the United States. Sections 1983 and 1343 have been construed by the courts as not authorizing civil rights actions brought in federal courts against federal officers for acts allegedly committed under color of federal law.[19]  *District of Columbia v. Carter*, 409 U.S. 418, 423–25, 93 S.Ct. 602, 605–07, 34 L.Ed.2d 613 (1973); *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1189, n.13 (5th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978); *Jones v. District of Columbia*, 424 F.Supp. 110, 111 (D.D.C.1977).

Plaintiffs argue that because they have alleged that the federal defendants acted in concert with the local defendants in denying them their statutory and constitutional rights, the federal defendants may be subject to a valid claim under Section 1983 pursuant to the rule in *Briley v. State of California*, 564 F.2d 849, 858 (9th Cir. 1977). In *Briley* the court merely held that those involved in purely private conduct may be found liable under Section 1983 if it is established that they have acted in concert with a party against whom a valid claim can be stated. Plaintiffs have not cited nor has this court discovered any cases which have extended this rule from its usual application to the case of federal officials. Indeed, such an extension would appear to conflict with the many cases cited above which deny application of Section 1983 to federal officials for acts committed under color of federal law. Moreover, such a holding would fly in the face of the plain facts. *Briley* is bottomed on the notion that in an appropriate case a private citizen may be clothed with the color of state law.

Here we deal with federal officers performing federal duties. It appears wholly unreasonable to suggest that the federal defendants, sued in their official federal capacity, were in fact clothed with the color of state law when, pursuant to their federal duty, they were monitoring local compliance with the provisions of CETA. *See Brown v. Sibley*, 650 F.2d 760, 764, n.4 (5th Cir. 1981).[20]

Plaintiffs' final allegations of jurisdiction over their claims against the federal defendants are based upon 28 U.S.C. § 1361 (Mandamus jurisdiction) and 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act). These statutory provisions also fail to provide the court with jurisdiction over plaintiffs' claims against the federal defendants and may be disposed of quickly. Mandamus is an extraordinary remedy and as such 28 U.S.C. § 1361 cannot be relied upon as a basis for jurisdiction where alternative remedies exist. *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1356 (9th Cir. 1978); *Guerra v. Board of Trustees of California State Universities and Colleges*, 567 F.2d 352 (9th Cir. 1977); *see also Rush v. Parham*, 625 F.2d 1150, 1154 (5th Cir. 1980); *Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.Cir.1977). In the instant action it is clear, and the court has found, that there exist both alternative administrative and judicial remedies, provided by CETA, through which plaintiffs' claims could be resolved. See discussion infra. Therefore Section 1361 does not provide the court with mandamus jurisdiction over the claims against the federal defendants in this case.

**19.** The rationale underlying this holding by the Supreme Court is that since Section 1983 was enacted by Congress pursuant to the fourteenth amendment, and since the fourteenth amendment was intended and designed to apply only to the states and not to territories, Congress lacked the power under the fourteenth amendment to create a cause of action, or jurisdiction over said cause of action, against federal officers. 409 U.S. at 423–25, 93 S.Ct. at 605–07.

**20.** Because of the Court's resolution of this issue I need not consider the effect of *Chapman v. Houston Welfare Rights Organization*, 441

U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) on plaintiffs' cause of action. I note in passing that its holding would appear fatal to plaintiffs' claim. Although I discuss in detail the effect of *Chapman* and *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) relative to the local defendant's motion to dismiss, I do observe here that whatever else is true, *Maine* does not in any way depart or affect the longstanding rule that Section 1983 does not provide a cause of action for claims against federal officers performing their federal duties.

■ Regarding plaintiffs' claims of jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202, it is well established that those provisions, known as the Declaratory Judgment Act, merely provide procedural and remedial flexibility to the federal courts where the court has independent grounds for jurisdiction over the action. Clearly the Declaratory Judgment Act is not an independent grounds upon which jurisdiction may be based nor does it extend the jurisdiction of the district court over cases which would otherwise be beyond its jurisdiction. *Luttrell v. United States*, 644 F.2d 1274, 1275 (9th Cir. 1980); *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980); *Fidelity and Casualty Co. v. Reserve Insurance Co.*, 596 F.2d 914, 916 (9th Cir. 1979); *Geni-Chlor International, Inc. v. Multisonics Development Corp.*, 580 F.2d 981, 984 (9th Cir. 1978). Because the court has concluded that there is no independent ground for jurisdiction over plaintiffs' claims the Declaratory Judgment Act is of no import to this case under the principle set forth above.

Therefore, for the reasons set forth above, the federal defendants' motion to dismiss will be granted in its entirety with the constitutional claims being dismissed for failure to state a claim upon which relief may be granted and the remaining claims dismissed for lack of subject matter jurisdiction.

### III

### LOCAL DEFENDANTS' MOTIONS

As noted above, the local defendants joined in the motion to dismiss or for summary judgment filed by the federal defendants. Although the motions of the local and federal defendants are then identical, the applicable law requires that they be addressed in a significantly different manner. In particular, plaintiffs' assertion that the Supreme Court's recent decision in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.E.2d 555 (1980), requires that this court exercise jurisdiction over their statutory claims against the local defendants commands much more serious consideration than did the same argument in the context of the federal defendants. Below the court will address the issues raised by plaintiffs' arguments.

In *Maine v. Thiboutot, supra,* the Supreme Court was faced with the issue of whether 42 U.S.C. § 1983 encompasses claims based solely upon statutory violations of federal law. After considering the language of the statute,[21] the Court's prior decisions in which Section 1983 was necessarily the exclusive statutory cause of action,[22] and the relevant legislative history [23] the Court concluded that Section 1983 provides a federal cause of action for those alleging solely a violation of federal statutory law.

The holding in *Maine v. Thiboutot, supra,* must be read in conjunction with the Supreme Court's decision in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). In *Chapman* the Court addressed the separate issue of whether 28 U.S.C. § 1343, 42 U.S.C. § 1983's jurisdictional counterpart, encompassed a claim of a violation of the federal Social Security Act. In essence, the Court held that Section 1343 did not confer federal jurisdiction over claims based solely upon a federal statute unless the statute in question could be fairly characterized as a statute securing "equal rights" within the language of Section 1343(3) or "civil rights" within Section 1343(4). The Court concluded that the Social Security Act could not be so characterized.

---

**21.** 42 U.S.C. § 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceed-

ing for redress." The Court concluded that the plain language of this statute "undoubtedly embraces" an aggrieved persons' claim for a violation of federal law. 448 U.S. at 4, 100 S.Ct. at 2503–2504.

**22.** 448 U.S. at 4–7, 100 S.Ct. at 2503–2505.

**23.** 448 U.S. at 7–8, 100 S.Ct. at 2505–2506.

Clearly, the Supreme Court's decisions in *Maine* and *Chapman* addressed distinct and separate, though related, issues involving the civil rights laws of the United States and the federal courts' jurisdiction to hear claims based upon those laws. Just as clear is the fact that the decisions are consistent with one another and are capable of a rational application by the lower courts. In *Maine v. Thiboutot, supra*, the Court in fact explains how the decisions are to be read together as follows:

> There is no inherent illogic in construing § 1983 more broadly than § 1343(3) was construed in *Chapman v. Houston Welfare Rights Organization*, supra. It would only mean that there are statutory rights which Congress has decided cannot be enforced in the federal courts unless 28 U.S.C. § 1331(a)'s [requirements are met].

448 U.S. 1, 8, n.6,[24] 100 S.Ct. 2502, 2506, n.6, 65 L.Ed.2d 555. In *Chapman v. Houston Welfare Rights Organization, supra*, the Supreme Court specifically left open the question of whether Sections 1983 and 1343 were necessarily coextensive. 441 U.S. 600, 616,[25] 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508. The question of whether a Section 1983 cause of action could be brought before federal district courts pursuant to the jurisdiction vested in the court by 28 U.S.C. § 1331, which the court concluded to be appropriate in *Maine v. Thiboutot*, was specifically not addressed in *Chapman* because, as the court noted, the amount in controversy in that case did not exceed $10,000. 441

U.S. 600, 606,[26] 99 S.Ct. 1905, 1910, 60 L.Ed.2d 508. Thus, any argument by the local defendants that the Court's holding in *Chapman*, by its terms, limits the application of *Maine v. Thiboutot, supra* in this case is unpersuasive.

Prior to *Maine* it may have been asserted that it was unclear whether the "laws" referred to in Section 1983 included all laws of the United States or only those federal statutes falling within the limiting definition attributed to Section 1343 in *Chapman* (i.e. only those federal statutes providing for equal or civil rights). In *Maine v. Thiboutot, supra*, however, the Supreme Court erased any doubts on that question by unequivocally stating that Section 1983 provides a cause of action to protect any right secured by any federal law. Indeed, the vast majority of lower federal courts to address this question[27] in the wake of *Maine v. Thiboutot, supra*, have interpreted the decision in this manner. *See Cervantes v. Guerra*, 651 F.2d 974, 978, n.8 (5th Cir. 1981); *Members of Bridgeport Housing v. City of Bridgeport*, 646 F.2d 55, 62 (2d Cir. 1981); *Romeo v. Youngberg*, 644 F.2d 147, 170 (3d Cir. 1980); *Kennecott Corp. v. Smith*, 637 F.2d 181, 186 n.5 (3d Cir. 1980); *Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir. 1980); *Hodges v. Tomberlin*, 510 F.Supp. 1280, 1282 (S.D. Ga.1980); *LeBoeuf v. Ramsey*, 503 F.Supp. 747, 754 (D.Mass. 1980); *Chesapeake Bay Foundation v. Virginia State Water Control Board*, 501 F.Supp. 821, 824 (E.D.Va.1980); *Robinson v. Pratt*, 497 F.Supp. 116, 121 (D.Mass.1980);

---

**24.** The requirements of 28 U.S.C. § 1331 referred to by the Court in this quote from *Maine* have been changed since that opinion was issued. At that time the statute required a $10,000 jurisdictional amount be satisfied. That statute now provides as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The amended statute became effective December 1, 1980, and applies to any civil actions pending on that date. Pub.L. 96–486, Section 4. Thus, the amended statute applies in this litigation.

**25.** It is interesting to note that in a very recent decision the Supreme Court has suggested that in *Chapman v. Houston Welfare Rights Organization, supra*, it held "that 28 U.S.C. § 1343,

the jurisdictional counterpart of 42 U.S.C. § 1983, was narrower in scope than the latter." *Fair Assessment in Real Estate Association, Inc. v. McNary*, —— U.S. ——, ——, n.3, 102 S.Ct. 177, 180, n.3, 70 L.Ed.2d 271 (1981).

**26.** As noted earlier, 28 U.S.C. § 1331 no longer contains a jurisdictional amount requirement. *See* n.24, infra.

**27.** Apparently the Ninth Circuit has yet to have the opportunity to address *Maine v. Thiboutot, supra*, except to note its relevance to the issues currently before the court. *See Davis v. United States Dept. of Housing and Urban Development*, 627 F.2d 942, 946, n.1 (9th Cir. 1980).

**538**

*Yapalater v. Bates,* 494 F.Supp. 1349, 1354–55 (S.D.N.Y.1980)[28], *aff'd* 644 F.2d 131 (2d Cir. 1981).

The fact that the holding in *Maine* would allow Section 1983 actions, in similar factual contexts, only against state and local officials as opposed to federal officials was recognized in that case by the dissenting justices. In this regard they noted:

> Moreover, state and local governments will bear the entire burden of liability for violations of statutory "civil rights" even when federal officials are involved equally in the administration of the affected program. Section 1983 grants no right of action against the United States, and few of the foregoing cooperative programs provide expressly for private actions to enforce their terms. Thus, private litigants may sue responsible federal officials only in the relatively rare case in which a cause of action may be implied from the governing substantive statute.

*Maine v. Thiboutot, supra,* 448 U.S. at 23–24, 100 S.Ct. at 2513–2514 (Powell, Jr. dissenting); *see also Brown v. Sibley,* 650 F.2d 760, 764, n.4 (5th Cir. 1981). Thus, in the present case, where the court has found neither an express nor implied right of action in CETA, the holding in *Maine* fails to provide plaintiffs with jurisdiction over their claims against the federal defendants, but does provide such a cause of action against the local defendants under Section 1983.

For all of the reasons stated above, it seems clear that plaintiffs have stated a valid cause of action pursuant to 42 U.S.C. § 1983 insofar as they allege a deprivation of rights secured by a federal statute (CETA) under color of state law. The remaining question posed by the local defendants' motion is whether given the provisions of CETA this court has jurisdiction to hear plaintiffs' valid Section 1983 claim. I conclude that such jurisdiction exists pursuant to 28 U.S.C. § 1331.

As recognized by the dissenting Justices in *Maine v. Thiboutot, supra,* the effect of the Court's holding in that case is that state and local government officials may properly be named as defendants in actions, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331, when it is alleged that the plaintiff has been deprived of federal rights by violation of a federal statute. This coverage extends to those violations occurring pursuant to the administration of any federal-state cooperative program. 448 U.S. at 22, 100 S.Ct. at 2513. One possible exception to the broad jurisdiction of the federal district courts to hear such claims filed pursuant to Section 1983 may be in those instances where the governing statute provides an express remedy for violations of its terms which is exclusive. *See Maine v. Thiboutot, supra* at 22, n.11, 100 S.Ct. at 2513, n.11 (J. Powell, dissenting); *Pennhurst State School v. Halderman,* 451 U.S. 1, 27, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694, 714 (1981). Whether this possible exception to the now established rule exists need not be addressed[29] in this action since it is clear,

**28.** Only one case discovered by the court strays from the near unanimous interpretation that *Maine v. Thiboutot, supra* holds that Section 1983 provides a cause of action for the violation of all federal laws. In that case an Eighth Circuit panel held that an alleged violation of the National Bank Act did not give rise to a cause of action under Section 1983. The court distinguished *Maine* on the grounds that it involved the rights of individuals pursuant to a federally created welfare program as opposed to a banking statute, *First National Bank of Omaha v. Marquette National Bank,* 636 F.2d 195, 198–99 (8th Cir. 1980), *cert. denied* 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981). That distinction, even if in any way supported by *Maine,* or the subsequent case law, is irrelevant to the issue before the court.

This action is based upon CETA, a federal statute of a social welfare nature similar to the Social Security Act at issue in *Maine.*

**29.** Certainly, any statute that would preclude judicial review of administrative actions challenged on the basis of alleged unconstitutionality or illegality would raise grave constitutional questions. *Johnson v. Robison,* 415 U.S. 361, 366, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974); *Devine v. Cleland,* 616 F.2d 1080, 1084 (9th Cir. 1980). When confronted with this possibility " 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question[s] may be avoided.' *United States v. Thirty-seven Photographs,* 402 U.S. 363, 369 [91 S.Ct. 1400, 1404, 28 L.Ed.2d 822]

under the analysis undertaken in Part II of this order, that CETA does not bar remedies otherwise available under federal or state law.

The court has concluded, pursuant to an analysis of the language of the statute, the legislative history, and the overall statutory structure, that CETA does not create an express private right of action. However, whether CETA creates a private right of action is not the relevant inquiry at this juncture; Section 1983 provides plaintiffs with the necessary cause of action. *Maine v. Thiboutot, supra.* Rather, the pertinent inquiry is whether CETA provides for an exclusive remedy for its violation. The court concludes that it does not. As noted previously, 29 U.S.C. § 816(*1*) provides as follows:

(1) The existence of remedies under this section *shall not preclude any person, who alleges that an action of a prime sponsor or of any other recipient violates any of the provisions of the chapter or the regulations promulgated under the chapter, from instituting a civil action or pursuing any other remedies authorized under Federal*, State, or local law. (emphasis added)

Thus, while not creating a cause of action under the Act (*see* discussion in Part II, above) Section 816(*1*) does act so as to preserve those causes of action otherwise available. To that extent Section 816(*1*) clearly requires that the remedies provided for by CETA not be deemed "exclusive" so as to preclude the exercise of the court's otherwise existing jurisdiction. Thus, in the present action as to the local defendants plaintiffs have alleged that the actions of the prime sponsor and its agents violate the provisions of the Act by bringing a civil action otherwise authorized under federal law (Section 1983). That is to say, inasmuch as the judicial remedy provided in CETA (29 U.S.C. § 817) is itself non-exclusive, the administrative procedure to which the judicial remedies are tied must in like manner be non-exclusive. Even assuming that Congress can require a potential Section 1983 plaintiff to exhaust administrative remedies, it may, even when providing such remedies, excuse their exhaustion. When Congress preserved the plaintiffs' other legal remedies it did just that.

I recognize that a different conclusion was reached by the district court in *CETA Workers' Action Committee v. City of New York*, 509 F.Supp. 902, 908–09 (S.D.N.Y. 1981). I do not find that opinion persuasive.[30] First, the district court in that case relied upon *CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926 (2d Cir. 1980), for the proposition that CETA itself created no express or implied private causes of action to redress alleged violations of CETA. On that basis alone and certainly without discussion, or apparently even consideration, of 29 U.S.C. § 816(*1*) the court concluded that CETA and its regulations provided for an exclusive remedy and hence no remedy could be derived from Section 1983. 509 F.Supp. at 909. Thus, to the extent that the case fails to discuss relevant, if not controlling, statutory provisions it cannot be viewed as enlightening on the issue before the court.

Even more persuasive, however, is the fact that *CETA Workers' Action Committee v. City of New York, supra* has been implicitly overruled on the very issue in question by the Circuit from which it came. In a recent opinion the Second Circuit Court of Appeals, in reviewing an action closely

(1971)." *Johnson v. Robison, supra*, 415 U.S. at 367, 94 S.Ct. at 1165; *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

**30.** As an initial matter it should be noted that the district court in *CETA Workers' Action Committee v. City of New York*, 509 F.Supp. 902 (S.D.N.Y.1981) apparently interpreted the possible exception to Section 1983's broad reach in cases in which the statute in question provided an exclusive remedy for its violations to be binding upon it as a matter of law. The Court so concluded despite the fact that the footnote suggesting this possible exception appeared in the dissenting opinion in *Maine*. 509 F.Supp. at 909. *See also Pennhurst State School v. Halderman*, 451 U.S. 1, 27, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694, 714 (1981) (suggesting that the existence of such an exception "is at least open to question.").

**540**

analogous to the one before the court, stated that,

> [W]e will assume that *Maine v. Thiboutot, supra,* authorizes a private cause of action under § 1983 to remedy state action denials of rights under CETA, despite our previous decision in *CETA Workers' Organizing Committee v. City of New York,* 617 F.2d 926 (2d Cir. 1980), rejecting a private right of action implied directly by CETA.

*Members of Bridgeport Housing v. City of Bridgeport,* 646 F.2d 55, 63 (2d Cir. 1981). Thus, *CETA Workers' Action Committee v. City of New York's* reliance on the Second Circuit holding was misplaced and that case would appear to have little, if any, impact on this issue.

Finally, the majority and particularly the dissenting opinion in *Maine v. Thiboutot, supra,* convincingly demonstrate that the Supreme Court both understood and intended that the analysis set forth above be followed by the lower courts. In this regard the dissenting opinion observed that, "The Court holds today ... that 42 U.S.C. § 1983 creates a cause of action for deprivations under "color of state law of any federal statutory right." 448 U.S. at 11, 100 S.Ct. at 2507 (J. Powell, dissenting). The dissenting Justices also noted that the effect of the opinion was to expand the scope of Section 1983 beyond that of its jurisdictional counterpart, Section 1343 as limited in *Chapman,* and create at the same time a broad right to enforce federal legislation in the federal courts beyond what they believed to be the purposes of Section 1983. 448 U.S. at 19–20, 100 S.Ct. at 2511–2512. As previously noted, the Justices were also aware that state and local officials could, as a result of *Maine,* be named in a civil rights action by persons alleging the deprivation of a federal right caused by the administration of any federal-state co-operative program. 448 U.S. at 22, 100 S.Ct. at 2513. Finally, the appendix to the Opinion of Justice Powell lists a "small sample" of statutes that could provide the basis for Section 1983 actions pursuant to the Court's holding in *Maine.* These federal statutes are characterized as either (1) regulatory programs in which the states are encouraged to participate, (2) resource management programs administered by cooperative agreements between federal and state agencies and (3) grant programs in which federal agencies subsidize in some way state and local programs meeting federal standards. 448 U.S. at 34, 100 S.Ct. at 2519. The statute at issue in the present case, CETA (29 U.S.C. § 901, et. seq.), is specifically listed by Justice Powell under the latter category.

Examination of the opinion of the Court in *Maine v. Thiboutot, supra,* clearly reveals that the Court was well aware that its decision in that case would allow civil rights actions to be filed in the district courts alleging solely federal statutory violations.[31] More specifically, the Court was aware and intended that actions alleging solely a violation of the provisions of CETA, as is the case here, would be properly before the district courts pursuant to their decision in *Maine.* The opinion of the Court makes only one response to the dissenting opinion's disagreement with the expanded scope of the jurisdiction of the federal courts over civil rights litigation. That response is short and to the point, "There is no inherent illogic in construing § 1983 more broadly than § 1343(3) was construed in *Chapman v. Houston Welfare Rights Organization, supra. It would only mean that there are statutory rights which Congress has decided cannot be enforced in the federal courts unless 28 U.S.C. § 1331['s requirements are satisfied]."* 448 U.S. at 8, n.6, 100 S.Ct. at 2506, n.6 (emphasis added).

---

**31.** The Court's intent to expand the federal courts' involvement in such actions is witnessed by at least one decision issued subsequent to *Maine v. Thiboutot.* In that case the court held, citing *Maine,* that the respondent had stated a claim for relief under 42 U.S.C. § 1983 where he alleged that state officials had violated the terms of Interstate Agreement on Detainers (found to be a congressionally sanctioned interstate compact presenting a question of federal law. *See* 4 U.S.C. § 112(a) (1976)). *Cuyler v. Adams,* 449 U.S. 433, 450–51, 101 S.Ct. 703, 712–13, 66 L.Ed.2d 641, 655 (1981).

This court concludes then, that plaintiffs' statutory claims against the local defendants state a cause of action pursuant to Section 1983 which this court may hear pursuant to its federal question jurisdiction as provided by 28 U.S.C. § 1331. Therefore, the local defendants' motion to dismiss the statutory claims is denied. Because plaintiffs' constitutional claims against the local defendants are similar to those alleged against the federal defendants in that they assert no more than a violation of the terms of the statute in question, those claims will be dismissed for the same reasons set forth in Part II of this Order. Plaintiffs will be granted forty-five (45) days in which to amend their complaint to permit them to a state a constitutional claim against the local defendants, if there are such claims.[32]

## IV

### MOTIONS FOR SUMMARY JUDGMENT

■ The defendants' motion to dismiss or in the alternative for summary judgment presently before the court directed itself, as to plaintiffs' statutory claims, solely to the issue of the court's jurisdiction to hear said claims. Defendants, therefore, did not move for summary judgment on the merits of the statutory claims nor did they present evidentiary material on that issue. See Notice of Motion and Motion to Dismiss or Alternatively for Summary Judgment. In their points and authorities in opposition to defendants' motion, plaintiffs suggest that summary judgment should be entered in their favor on the merits of this action. On any of a number of bases, plaintiffs' motion for summary judgment, if it may be construed as such, must be denied. It is dispositive that plaintiffs have failed to comply with Local Rule 113(b)'s requirement that

any motion must be noticed. No notice was filed with the Clerk of the Court indicating that plaintiffs were filing a counter-motion within the meaning of Local Rule 113(h).[33] Counsel for plaintiffs was informed that this failure to comply with the local rules would preclude the court from considering any motion for summary judgment on plaintiffs' behalf at this time. Therefore, to the extent it may be so construed, plaintiffs' motion for summary judgment is denied.

## V

### CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1. The federal defendants' motion to dismiss plaintiffs' statutory claims against them for lack of subject matter jurisdiction is granted;

2. The federal defendants' motion to dismiss plaintiffs' constitutional claims for failure to state a claim upon which relief may be granted is granted;

3. The local defendants' motion to dismiss plaintiffs' constitutional claims against them for failure to state a claim upon which relief may be granted is granted and plaintiffs are given forty-five (45) days leave to amend their complaint in this regard;

4. The local defendants' motion to dismiss plaintiffs' statutory claims against them for lack of subject matter jurisdiction is denied;

5. Plaintiffs' motion for summary judgment, having been improperly filed, is denied.

IT IS SO ORDERED.

**32.** Plaintiffs are granted leave to amend as to their constitutional claims against the local defendants as opposed to the federal defendants because as to the former it is not clear that counsel waived the opportunity to so amend. See n. 16, infra.

**33.** Given the resolution of the issue set forth above, it is not necessary to consider plaintiffs' motion on the merits. Nonetheless, on a motion for summary judgment the moving party

has the burden of demonstrating that no material issue of fact exists and that the party is entitled to judgment as a matter of law. Blair Foods Inc. v. Ranchers Cotton Oil, 610 F.2d 665 (9th Cir. 1980); British Airways Board v. Boeing Co., 585 F.2d 946 (9th Cir. 1978), cert. denied 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). It is doubtful, based upon the record that exists at this time, that plaintiffs would have met this burden.